**2021 IL 125642**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 125642)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
CHALEAH BURGE, Appellant.

*Opinion filed March 18, 2021.*

JUSTICE OVERSTREET delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Garman, Theis, Neville, Michael J. Burke, and Carter concurred in the judgment and opinion.

**OPINION**

¶ 1        At issue in this appeal is whether the admonishment requirement of section 113-4(c) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/113-4(c) (West 2016)) applies to guilty pleas other than those entered at arraignment and whether the trial court erred in denying defendant's motion to withdraw her guilty plea.

¶ 2      Defendant, Chaleah Burge, a certified nursing assistant (CNA) who was formerly employed as a home health care provider, pled guilty to one count of theft, a Class A misdemeanor (720 ILCS 5/16-1(a)(1)(A), (b)(1) (West 2016)), after stealing $280 from a client receiving home health care services. Ten days after pleading guilty, defendant filed a motion to withdraw her guilty plea and vacate the judgment, claiming that her plea was not voluntarily entered. The circuit court of Champaign County denied defendant's motion, and the appellate court affirmed. 2019 IL App (4th) 170399. This court allowed defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Oct. 1, 2019).

¶ 3      STATUTE INVOLVED

¶ 4      At the time defendant pled guilty in this case, section 113-4 of the Code provided as follows:

> "(a) When called upon to plead at arraignment the defendant shall be furnished with a copy of the charge and shall plead guilty, guilty but mentally ill, or not guilty.
>
> (b) If the defendant stands mute a plea of not guilty shall be entered for him and the trial shall proceed on such plea.
>
> (c) If the defendant pleads guilty such plea shall not be accepted until the court shall have fully explained to the defendant the following:
>
> > (1) the maximum and minimum penalty provided by law for the offense which may be imposed by the court;
> >
> > (2) as a consequence of a conviction or a plea of guilty, the sentence for any future conviction may be increased or there may be a higher possibility of the imposition of consecutive sentences;
> >
> > (3) as a consequence of a conviction or a plea of guilty, there may be registration requirements that restrict where the defendant may work, live, or be present; and
> >
> > (4) as a consequence of a conviction or a plea of guilty, there may be an impact upon the defendant's ability to, among others:

> (A) retain or obtain housing in the public or private market;
>
> (B) retain or obtain employment; and
>
> (C) retain or obtain a firearm, an occupational license, or a driver's license.
>
> After such explanation if the defendant understandingly persists in his plea it shall be accepted by the court and recorded.
>
> (d) If the defendant pleads guilty but mentally ill, the court shall not accept such a plea until the defendant has undergone examination by a clinical psychologist or psychiatrist and the judge has examined the psychiatric or psychological report or reports, held a hearing on the issue of the defendant's mental condition and is satisfied that there is a factual basis that the defendant was mentally ill at the time of the offense to which the plea is entered.
>
> (e) If a defendant pleads not guilty, the court shall advise him at that time or at any later court date on which he is present that if he escapes from custody or is released on bond and fails to appear in court when required by the court that his failure to appear would constitute a waiver of his right to confront the witnesses against him and trial could proceed in his absence." 725 ILCS 5/113-4 (West 2016).

¶ 5                                            BACKGROUND

¶ 6       In November 2016, the State charged defendant with one count of theft, a Class A misdemeanor (720 ILCS 5/16-1(a)(1)(A), (b)(1) (West 2016)), alleging that on September 1, 2016, defendant knowingly exerted unauthorized control over the victim's property, namely United States currency having a value not in excess of $500, intending to permanently deprive the victim of the use or benefit of the property. An arraignment hearing was held on December 7, 2016, where defendant was advised of the charges against her and the potential penalties for those charges, as well as admonished of her various rights. After defendant acknowledged that she understood the charge against her and the possible penalties, the trial court granted her request to appoint the public defender to represent her. The trial court also

accepted defendant's plea of not guilty, set the case for a pretrial hearing, and released defendant on her own recognizance upon posting a $1000 bond.

¶ 7 On March 20, 2017, defendant entered a fully negotiated guilty plea to the charged offense. Prior to accepting her guilty plea, the trial court admonished defendant pursuant to Illinois Supreme Court Rule 402(a) (eff. July 1, 2012). According to the State's factual basis, the victim had undergone knee replacement surgery and was receiving home health care from defendant, who worked for Help at Home. The State further alleged that on or about September 1, 2016, while the victim and defendant were running errands, the victim cashed a $280 check. The State claimed that the cash was later stolen by defendant when the victim went into a store and left her purse in the vehicle with defendant. The State concluded that it was not until after running additional errands that the victim discovered the money was missing.

¶ 8 The trial court accepted the State's factual basis and entered judgment on defendant's plea of guilty, sentencing her to 12 months' conditional discharge.

¶ 9 Ten days after pleading guilty, defendant filed a motion to withdraw her guilty plea and to vacate the judgment, claiming her plea was not voluntarily entered. In her motion, defendant claimed she was unaware that she would lose her job if she pled guilty. Specifically, defendant asserted that the trial court failed, as required by section 113-4(c) of the Code, to inform her of the collateral consequences of a theft conviction on her ability to obtain and retain employment. 725 ILCS 5/113-4(c) (West 2016). Defendant concluded that she lost her employment as a direct result of her guilty plea.

¶ 10 At the hearing on defendant's motion held in May 2017, defendant testified that, when she pled guilty, she was no longer working for Help at Home, the home health care company that had employed her when the State brought the underlying charge. Rather, defendant testified that she had been working for a different home health care company, Aging in Place, for three months when she pled guilty. Defendant further stated that it was not until after she pled guilty and was sentenced that Aging in Place terminated her employment. According to defendant, she had been unable to find additional employment in the home health care career field.

¶ 11    Following arguments on defendant's motion, the trial court denied the motion to withdraw the guilty plea, finding that defendant's plea was voluntary because she was properly admonished under Rule 402 and, therefore, informed of the nature of the charge, the range of penalties, and her constitutional rights. The trial court further held that withdrawal of defendant's guilty plea was not required by section 113-4(c) because the provision is directory and the legislature lacked authority to mandate additional admonishments beyond those required under Illinois Supreme Court Rules governing admonishments. In particular, the trial court stated:

> "I think that the statute that the defendant cites is directory. There are no direct, immediate and automatic consequences under the court's control that deal with employment. What Rule 402 is about is advising the defendant of those constitutional rights that she has that are involved with the criminal process and that she is made aware of and then is advised giving up through the entry of a plea of guilty. It's clear that this is done in a voluntary fashion by— according to the record, that this is done in a voluntary fashion by [defendant]. She was advised, as she was supposed to be, by Supreme Court Rule 402 of the nature of the charge, the range of penalties and those essential constitutional rights that are in Rule 402. That is the right to require the presumption of innocence, the right to require proof beyond a reasonable doubt, the right to confront and cross[-]examine witnesses, the right to proceed to trial, trial by jury or trial by judge, the right to present witnesses and evidence on your behalf, [and] the right to testify or choose not to testify. Those are the fundamental constitutional rights that are at issue when someone enters a plea of guilty and those [defendant] was advised of. That's what's consistent with Rule 402. So, in addition to the statute being one that's directory, the consequences that I believe on the facts [defendant] did suffer are collateral. \*\*\*
>
> The supreme court has decided what's—what a person has to be advised of when they enter a plea of guilty. That is not what's in the, the statute. And I, I think it's correct that the legislature cannot add to what's constitutionally required by the supreme court rule.
>
> So really the, the question then becomes, because I think the statute cannot be imposed on the court, it is directory rather than mandatory and it does deal with collateral consequences. To say they're collateral doesn't mean they're not

important because these things are important. Housing, employment, the ability to have an occupational license or a firearm, driver's license are important. They're not trivial. These are important things. That's—I think that's why the statute addresses it. But they are collateral."

¶ 12    The trial court also found no manifest injustice warranting withdrawal because there was no evidence that defendant misapprehended the facts or the law or that there was any doubt as to her guilt. As a result, the trial court denied defendant's motion.

¶ 13    On appeal, defendant argued that the trial court erred in denying her motion to withdraw her guilty plea because the trial court's failure to admonish her as required by section 113-4(c) of the Code violated a mandatory statutory provision or, alternatively, because accepting the plea after the inadequate admonishments resulted in a manifest injustice.

¶ 14    In a split decision, the appellate court affirmed, holding that section 113-4(c) applies only to guilty pleas entered at arraignment and that the trial court did not abuse its discretion by denying defendant's motion to withdraw her guilty plea because no manifest injustice occurred. 2019 IL App (4th) 170399, ¶ 46. The majority, in *dicta*, also found that, even if section 113-4(c) did apply to defendant, the statute is directory rather than mandatory and, thus, the failure to provide the admonishments did not automatically require the trial court to grant a motion to withdraw a guilty plea. *Id.* ¶¶ 29, 32-39. The special concurrence disagreed that section 113-4(c) applies only to guilty pleas entered at arraignment but agreed, albeit for a different reason, with the majority's view that the admonishment requirement is directory. *Id.* ¶ 51 (Harris, J., specially concurring). The special concurrence further concurred with the majority that the defendant suffered no manifest injustice when the trial court accepted her plea. *Id.* ¶ 63.

¶ 15                                   ANALYSIS

¶ 16    The threshold question to be resolved in this case is whether the admonishment requirements contained under section 113-4(c) of the Code (725 ILCS 5/113-4(c) (West 2016)) apply to guilty pleas entered subsequent to arraignment.

¶ 17    Section 113-4(c) requires, in pertinent part, that "[i]f the defendant pleads guilty such plea shall not be accepted until the court shall have fully explained to the defendant" the various collateral consequences of pleading guilty. *Id.* Subsection (c) is one of five provisions of section 113-4, titled "Plea," which is contained in article 113 of the Code, "Arraignment." *Id.* art. 113. Effective January 1, 2017, the General Assembly amended section 113-4(c) of the Code, adding subsections (c)(2), (c)(3), and (c)(4) regarding various collateral consequences of pleading guilty. Pub. Act 99-871 (eff. Jan. 1, 2017) (amending 725 ILCS 5/113-4). One such admonishment, subsection (c)(4)(B), which is at issue here, informs the defendant that "as a consequence of a conviction or a plea of guilty, there may be an impact upon the defendant's ability to *** retain or obtain employment." 725 ILCS 5/113-4(c)(4)(B) (West 2016). It is undisputed that when the trial court accepted defendant's guilty plea at a hearing subsequent to her arraignment, the trial court did not advise defendant pursuant to subsection (c). Rather, the trial court advised defendant pursuant to Illinois Supreme Court Rule 402 (eff. July 1, 2012). *People v. Fuller*, 205 Ill. 2d 308, 323 (2002) ("Substantial compliance with Rule 402 is sufficient to establish due process."); *People v. Jamison*, 197 Ill. 2d 135, 164 (2001) (finding court did not abuse discretion by denying motion to withdraw guilty plea where "defendant was fully admonished by the trial court in accord with Supreme Court Rule 402(a)").

¶ 18    Before this court, defendant argues that the plain language and statutory scheme of section 113-4(c) require the trial court to admonish a defendant of the various consequences at all times when a defendant is pleading guilty, not just at arraignment. Defendant points to the fact that section 113-4(c) contains no language limiting the provision only to pleas of guilty at arraignment. Rather, defendant argues, the recent amendments to section 113-4(c) admonishments establish an intent to bolster the assurance that a defendant is voluntarily and intelligently waiving her right to trial by adding to the existing list of admonishments required at any guilty plea hearing, not just to pleas of guilty made at arraignment.

¶ 19    The State counters that the plain language and structure of section 113-4, when read in context with the other provisions in section 113-4, as well as when read in connection to other sections of the Code, confirm that section 113-4(c) applies only when a defendant pleads guilty at arraignment. We agree.

¶ 20    It is well settled that the primary objective of this court in construing the meaning of a statute is to ascertain and give effect to the intent of the legislature and that the best indication of that intent is the statutory language itself, giving it its plain and ordinary meaning. *People v. Hammond*, 2011 IL 110044, ¶ 53. If the language of a statute is clear and unambiguous, we will give effect to the statute's plain meaning without resort to other aids of statutory construction. *Palm v. Holocker*, 2018 IL 123152, ¶ 21. Importantly, a court must view the statute as a whole, construing words and phrases in light of other relevant statutory provisions and not in isolation. *State ex rel. Leibowitz v. Family Vision Care, LLC*, 2020 IL 124754, ¶ 35. As such, courts may not depart from a statute's plain language by reading into it exceptions, limitations, or conditions the legislature did not express. *In re Hernandez*, 2020 IL 124661, ¶ 18. Because the issue before us concerns a matter of statutory construction, our review is *de novo*. *In re Jarquan B.*, 2017 IL 121483, ¶ 21.

¶ 21    As mentioned, subsection (c) is one of five separate provisions that encompass section 113-4. Subsection (a) states, "[w]hen called upon to plead at arraignment the defendant shall be furnished with a copy of the charge and shall plead guilty, guilty but mentally ill, or not guilty." 725 ILCS 5/113-4(a) (West 2016). By its plain terms, subsection (a) serves as a general provision that sets the scope for the remainder of the provisions within section 113-4, as it explicitly directs the trial court to provide the defendant with a copy of the charge and identifies the possible types of pleas that may (or may not) be made by a defendant "at arraignment." *Id.*

¶ 22    For instance, subsection (b) informs the trial court of the necessary procedure if a defendant stands silent when informed of the charges and asked to make a plea, stating that "[i]f the defendant stands mute a plea of not guilty shall be entered for him and the trial shall proceed on such plea." *Id.* § 113-4(b). Subsection (b) relates back to subsection (a) by directing that, if the defendant fails to enter one of the three pleas identified in subsection (a), then the trial court must enter a plea of not guilty and proceed to trial.

¶ 23    Defendant argues that subsection (b)'s direction about proceeding to trial as though the silent defendant pled not guilty suggests that subsection (b) is not specifically directed at arraignment since it refers to "something that would occur at a later date." However, the procedural guidance of subsection (b) is consistent

with a statute focused specifically on arraignment. Thus, subsection (b) can be fairly construed to apply at arraignment because this is the only time the question of a mute defendant could arise when making a plea.

¶ 24　　Similarly, a plain reading of subsection (d), which states, "[i]f the defendant pleads guilty but mentally ill, the court shall not accept such a plea until the defendant" has undergone a medical examination and later a hearing on defendant's medical condition, also illustrates that section 113-4 applies at arraignment unless otherwise directed. *Id.* § 113-4(d). That is so because, comparable to subsection (b), subsection (d) guides the trial court on the proper procedure to follow when a defendant pleads "guilty but mentally ill"—another possible plea that may occur at arraignment as indicated under subsection (a). Additionally, subsection (d), like subsection (b), contains no express language that indicates any broad application beyond arraignment, and without such express language, we must read the provision within the plain language of the statute as a whole and refrain from including conditions not clearly intended by the legislature. *People v. Legoo*, 2020 IL 124965, ¶ 14 ("We may not depart from the plain language and meaning of a statute by reading into the statute exceptions, limitations, or conditions that the legislature did not express.").

¶ 25　　Analogous to our analysis regarding subsections (b) and (d), examining the plain language and the context in which it is used, subsection (e) provides further support that the legislature intended section 113-4 to be read as a cohesive section of article 113 that applies only at arraignment unless otherwise expressly specified.

¶ 26　　Subsection (e) states,

"[i]f a defendant pleads not guilty, the court shall advise him at that time or at any later court date on which he is present that if he escapes from custody or is released on bond and fails to appear in court when required by the court that his failure to appear would constitute a waiver of his right to confront the witnesses against him and trial could proceed in his absence." 725 ILCS 5/113-4(e) (West 2016).

When reading section 113-4, subsection (e) is the only subsection in section 113-4 to include the additional reference to "any later court date." If, as defendant argues, subsection (a) is the only subsection limited to arraignment, then this language

specifying that subsection (e) applies beyond arraignment would be entirely meaningless to include. However, we agree with the State that the legislature expressly specified that subsection (e) applies after arraignment because, without this expressed phrase, subsection (e) would be limited to arraignment, as explained *supra*, and thus, the additional phrase "any later court date" ensures that defendants who cannot receive subsection (e)'s admonishment at their arraignment nonetheless receives the necessary admonishment prior to trial.

¶ 27    As this court in *People v. Garner*, 147 Ill. 2d 467, 481 (1992), discussed, section 113-4(e)'s *in absentia* warnings during arraignment are indispensably important for a trial court to provide, "[g]iven that the necessity of trial is determined at arraignment," since that is when the defendant is also being informed of other significant protections, such as the right to counsel and the right to a jury. In *Garner*, this court went on to further note that "[w]e do not read section 113-4(e) as providing the court with an option for when the admonition should be given as much as we read it as not precluding an opportunity for a later admonishment." *Id.* at 482. Accordingly, this court held that subsection (e) was drafted to afford the trial court with a mechanism for an additional and later, yet no less effective, opportunity to admonish the defendant when he pleads not guilty. *Id.* Likewise, in *Phillips*, this court found that subsection (e) "applies only to a defendant when he appears in open court and pleads not guilty at the time of his arraignment, or is present in court at any later date after his arraignment." *People v. Phillips*, 242 Ill. 2d 189, 196 (2011). This court's prior statements regarding section 113-4(e) support our interpretation that the legislature intended the provisions of section 113-4 to apply at arraignment *unless otherwise specified*.

¶ 28    Accordingly, subsection (e) reveals that the legislature knew how to express its intent that a particular subsection should not be limited to only arraignment. *In re K.C.*, 186 Ill. 2d 542, 549-50 (1999) ("It is well established that, by employing certain language in one instance and wholly different language in another, the legislature indicates that different results were intended."). As such, we find the phrases "at that time" and "or any later court date" indicative of the legislature's clear intent to distinguish subsection (e)'s application beyond arraignment. In other words, subsection (e) "serves as the procedural mechanism to effect a formal waiver of a defendant's right to be present" (*Phillips*, 242 Ill. 2d at 197 (citing *Garner*, 147 Ill. 2d at 483)) and provides that a defendant who pleads not guilty must be advised

about trial *in absentia* "at that time"—that is, when he pleads "not guilty" at arraignment—"or at any later court date on which he is present" (725 ILCS 5/113-4(e) (West 2016)).

¶ 29    Turning to the issue at bar, reading subsection (c) as an integrated whole with the other provisions of section 113-4 (*People ex rel. Madigan v. Wildermuth*, 2017 IL 120763, ¶ 17 (we consider the statute in its entirety, keeping in mind the subject it addresses and the apparent intent of the legislature in enacting it)), it is clear the legislature intended that the admonishments incorporated in subsection (c) apply only at arraignment, unless otherwise specified.

¶ 30    Comparably to subsections (b), (d), and (e), subsection (c) addresses an alternate response a defendant may provide at arraignment: a plea of guilty. Unlike subsection (e), where the legislature included an additional reference to "any later court date," subsection (c), like subsections (b) and (d), contains no such qualifying language giving it broad application beyond arraignment. Thus, without express language providing broader application, we can properly assume that the legislature intended for the provision to be limited to only arraignment. See *People v. Edwards*, 2012 IL 111711, ¶ 27 ("Where language is included in one section of a statute but omitted in another section of the same statute, we presume the legislature acted intentionally and purposely in the inclusion or exclusion."); *State Bank of Cherry v. CGB Enterprises, Inc.*, 2013 IL 113836, ¶ 56 (same). Stated differently, had the legislature intended for trial courts to admonish defendants of the collateral consequences contained in subsection (c) at a later court date, it could have easily done so. It did not, and we must refrain from reading such a requirement into the statute. See *Schultz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391, 408 (2010) ("A court may not add provisions that are not found in a statute, nor may it depart from a statute's plain language by reading into the law exceptions, limitations, or conditions that the legislature did not express."); *People v. Shinaul*, 2017 IL 120162, ¶ 17 ("Absent express language in the statute providing an exception, we will not depart from the plain language and read into the statute exceptions, limitations, or conditions that the legislature did not express.").

¶ 31    Moreover, if we construed subsection (c) as defendant requests, we would render another section of the Code, section 115-2(a) (725 ILCS 5/115-2(a) (West 2016)), superfluous. Section 115-2, which governs the acceptance of pleas of guilty

before or during trial, states "[b]efore or during trial a plea of guilty may be accepted when *** [t]he court has informed the defendant of the consequences of his plea and of the maximum penalty provided by law which may be imposed upon acceptance of such plea." *Id.* § 115-2(a)(2). Thus, if the admonishment contained in section 113-4(c) also applied to every plea of guilty besides only at arraignment, then there would be no need for section 115-2(a), provided that the first subsection of section 113-4(c) is essentially identical to section 115-2(a). Compare *id.* § 113-4(c)(1) ("If the defendant pleads guilty such plea shall not be accepted until the court shall have fully explained to the defendant the following: (1) the maximum and minimum penalty provided by law for the offense which may be imposed by the court[.]"), with *id.* § 115-2(a)(2) (*supra*). However, we can easily resolve any apparent conflict by interpreting section 115-2(a) as the more general provision concerning pleas of guilty, while section 113-4(c) is the more specific provision used when a defendant pleads guilty at arraignment, since it provides additional, more specific admonishments than what is contained in subsection 115-2(a). By reading the two provisions harmoniously, we adhere to the general principle that, whenever a legislative body enacts a provision, it has in mind previous statutes relating to the same subject matter such that they should all be construed together. See *Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450, 459 (2002) ("Statutes relating to the same subject must be compared and construed with reference to each other so that effect may be given to all of the provisions of each if possible." (citing *Henrich v. Libertyville High School*, 186 Ill. 2d 381, 392 (1998))); *Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 422 (2002) (sections of the same statute should also be considered *in pari materia*, and each section should be construed with every other part or section of the statute to produce a harmonious whole); *Board of Education of the City of Chicago v. Moore*, 2021 IL 125785, ¶ 40 ("Where there is an alleged conflict between different sections of the same statute, a court has a duty to interpret those sections in a manner that avoids an inconsistency and gives effect to both sections, where such an interpretation is reasonably possible.").

¶ 32    We further note that the recent amendments to section 113-4(c) further support our interpretation. The more specific admonishments of subsection (c) became effective in 2017, well after the enactment of the general admonishments found under section 115-2. See Pub. Act 82-553, § 2 (eff. Sept. 17, 1981). Prior to the 2017 amendments, section 113-4(c) required only that the trial court admonish a

defendant pleading guilty regarding "the consequences of such plea and the maximum penalty provided by law for the offense which may be imposed by the court." 725 ILCS 5/113-4(c) (West 2014). The previous version was nearly identical to section 115-2(a) in that the admonishment was very general. Compare *id.*, with 725 ILCS 5/115-2(a) (West 2016). However, the amended admonishments include a greater number of warnings a trial court is required to provide to a defendant. Section 113-4(c)'s more specific admonishments reveal the intent to safeguard defendants from the consequences of pleading guilty without the opportunity to consult with counsel, which may happen more frequently at arraignment. Thus, the legislature provided a defendant pleading guilty at arraignment with admonishments additional to those in the previous version, as well as those incorporated under section 115-2's general admonishments, and as required by Rule 402. This is logical given that, unless specifically stated otherwise, there is no requirement for the trial court to admonish a defendant about the collateral consequences of pleading guilty pursuant to section 113-4(c) other than at arraignment because once counsel has been retained or appointed, as in this case, it is defense counsel's duty to advise the defendant about those consequences. See *People v. Correa*, 108 Ill. 2d 541, 550 (1985) ("It is counsel's responsibility, and not the court's, to advise an accused of a collateral consequence of a plea of guilty ***."); *People v. Huante*, 143 Ill. 2d 61, 71 (1991) (noting the general view that a defendant's awareness of collateral consequences is not a prerequisite to the entry of a knowing and voluntary plea of guilty); *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) ("It is quintessentially the duty of counsel to provide her client with available advice about an issue like deportation ***."); see also *People v. Hughes*, 2012 IL 112817, ¶¶ 54-59 (highlighting various American Bar Association standards concerning the duties of defense counsel to advise a defendant of the collateral consequences of pleading guilty). Thus, the legislature determined that only at arraignment, prior to the appointment of counsel, must a trial court admonish a defendant of the collateral consequences of pleading guilty. That is not the situation here, where defendant pled guilty after arraignment with defense counsel appointed and was properly admonished pursuant to Rule 402.

¶ 33   Our legislative interpretation comports with the general understanding that "[i]t is presumed that every amendment to a statute is made for some purpose, and effect must be given to the amended law in a manner consistent with the amendment." *People v. Youngbey*, 82 Ill. 2d 556, 563 (1980). As such, it is reasonable to view

the amendments as the legislature's intent to further differentiate section 113-4 from section 115-2, thereby further proving that section 113-4 is a specific section of the Code pertaining to pleas made at arraignments.

¶ 34    Accordingly, applying section 113-4(c) to only arraignment proceedings is reasonable considering each subsection of section 113-4 as constituting a single, cohesive statute regarding "pleas" that fall within the greater statute concerning "arraignment."[1] We find that defendant interprets subsection 113-4(c) in isolation, thereby losing focus on how the provision is closely integrated with the other provisions of section 113-4. See *Wildermuth*, 2017 IL 120763, ¶ 17 (words and phrases should not be construed in isolation but must be interpreted in light of other relevant provisions of the statute); *Jarquan B.*, 2017 IL 121483, ¶ 22 (the fundamental principle of statutory interpretation is that statutes must be read as a whole and not as isolated provisions). Essentially, defendant requests this court to judicially amend section 113-4(c) with language comparable to section 113-4(e)'s requirement that the provision must be given "at any later court date." We decline to read into the provision additional language. *People v. Perry*, 224 Ill. 2d 312, 323 (2007) ("Where the language of the statute is clear and unambiguous, we must apply it as written, without resort to extrinsic aids to statutory construction. We do not depart from the plain language of the statute by reading into it exceptions, limitations, or conditions that conflict with the expressed intent.") Rather, we find it clear that the five subsections logically flow together to create a simple, comprehensive procedural guide regarding pleas (or lack thereof) made *at arraignment*. Accordingly, the trial court did not err by failing to admonish defendant of subsection (c) when she pled guilty at a hearing subsequent to her initial arraignment hearing.[2]

---

[1]We note that section 113-4(c) is not limited to pleas at arraignment merely because it is contained in article 113 but, rather, section 113-4's plain language, internal structure, and relationship to other statutes governing acceptance of pleas show that the legislature intended that subsection (c) apply only to pleas at arraignment.

[2]Because the trial court was not required to admonish defendant of section 113-4(c), we need not address whether the trial court's failure to admonish her pursuant to section 113-4(c) violated a mandatory statutory provision.

¶ 35                                    Manifest Injustice

¶ 36        We next consider defendant's alternative contention that even if we hold that
the trial court was not required to admonish her of section 113-4(c) prior to her
guilty plea, a manifest injustice occurred because she pled guilty under the
misapprehension that she would not automatically lose her employment as a direct
result of pleading guilty. As such, defendant argues that not receiving the
information regarding possible adverse consequences on her employment, she was
prevented from voluntarily, knowingly, and intelligently entering her plea.
Defendant claims that she was prejudiced by this misapprehension when,
immediately following her guilty plea, she lost her employment.

¶ 37        A defendant does not have an automatic right to withdraw her guilty plea, as
"[a] plea of guilty is a grave act that is not reversible at the defendant's whim."
*People v. Reed*, 2020 IL 124940, ¶ 47. Rather, a defendant must establish a manifest
injustice under the facts involved. *People v. Delvillar*, 235 Ill. 2d 507, 520 (2009).
A guilty plea may be withdrawn where it was entered through a misapprehension
of the facts or law or where there is doubt as to the guilt of the accused and justice
would be better served by conducting a trial. *Hughes*, 2012 IL 112817, ¶ 32. In
order to vacate a plea based on a misapprehension of law or fact, the defendant must
establish, under an objective standard, that her mistaken beliefs or impressions were
reasonably justified under the circumstances as they existed at the time of the plea.
*People v. Hale*, 82 Ill. 2d 172, 176 (1980). We review the trial court's decision to
grant or deny a motion to withdraw a guilty plea for an abuse of
discretion. *Delvillar*, 235 Ill. 2d at 519. An abuse of discretion will only be found
"where the court's ruling is arbitrary, fanciful, unreasonable, or no reasonable
person would take the view adopted by the trial court." *Id.*

¶ 38        Here, defendant argues that the trial court abused its discretion by failing to
admonish her of the collateral consequences found in section 113-4(c). As
defendant correctly acknowledges in her brief, any failure to admonish her of
potential employment consequences does not amount to a constitutional violation.
That is so because, generally, "[d]ue process does not require that the defendant be
informed of the collateral consequences of a guilty plea." *Id.* at 520-21. A collateral
consequence is one that does not relate to the length or nature of the sentence
imposed on the basis of the plea. *People v. Williams*, 188 Ill. 2d 365, 372 (1999).

- 15 -

"Examples of collateral consequences have included loss of employment, loss of voting rights, license suspension, and dishonorable discharge from the military." *Hughes*, 2012 IL 112817, ¶ 36. Because loss of employment is a collateral consequence, any failure to admonish defendant to that regard does not affect the voluntariness of her plea. *Id.* Nonetheless, although the failure to admonish a defendant of the collateral consequence of the potential loss of employment does not rise to the level of a constitutional violation, "reversal may yet be required if real justice has been denied or if the defendant has been prejudiced by the inadequate admonishment." *Delvillar*, 235 Ill. 2d at 522.

¶ 39  At the hearing on defendant's motion to withdraw the guilty plea, the trial court considered whether defendant showed a manifest injustice under the facts. While the trial court found defendant was adversely impacted by her decision to plead guilty, *i.e.*, she later lost her employment, the trial court found nothing to indicate any doubt of defendant's guilt or that she was acting under a misapprehension of the facts or of the law at the time she pled guilty. Although defendant claims she acted under a misapprehension of how pleading guilty would impact her employment, this belief is dubious given the fact she pled guilty to stealing from one of her home health care clients. As the appellate court aptly put it, common sense dictates that any health care provider, current or future, would have legitimate concerns about an employee's ability to care for a patient when he or she is convicted of a crime against someone for whom she was employed to provide care.

¶ 40  Moreover, even if defendant were admonished of section 113-4(c), it would have been unlikely that it would have corrected her alleged misapprehension because section 113-4(c) requires only that a defendant be admonished that "there may be an impact upon the defendant's ability to *** retain or obtain employment" as a consequence of pleading guilty, not that a defendant will automatically lose her employment if she pleads guilty. 725 ILCS 5/113-4(c)(4)(B) (West 2016). Thus, section 113-4(c) would not have definitively informed defendant that she would lose her job. Rather, section 113-4(c) is a general, commonsense admonishment that pleading guilty could possibly affect one's employment.

¶ 41  Additionally, the trial court was not in the proper position to comprehensively advise defendant of the collateral consequences of pleading guilty, given that defendant's continued employment is based on her maintaining her CNA license

under state law. See 225 ILCS 65/70-5(b)(3) (West 2016) (statute providing grounds for disciplinary action of a CNA license holder if the licensee is convicted of a misdemeanor that is either "directly related to the practice of the profession" or "an essential element of which is dishonesty"). This specific collateral consequence of pleading guilty is precisely the type of advice defense counsel would provide to a defendant prior to entering a plea of guilty. Again, even if the trial court advised defendant that, "as a consequence of a conviction or plea of guilty, there may be an impact upon the defendant's ability to, among others *** retain or obtain employment," section 113-4(c)'s admonishment would not inform her about the licensing requirement that specifically pertains to her employment. As such, defendant fails to show that, but for the absence of an admonishment that she could lose her job if she pled guilty, she would not have pled guilty. Accordingly, we find that defendant has failed to meet her burden to establish she entered her plea of guilty on a misapprehension of fact or law and that the trial court abused its discretion in denying her motion to withdraw her guilty plea.

¶ 42                                    CONCLUSION

¶ 43        For the reasons stated, we find that the admonishments under section 113-4(c) are not required to be given when a defendant pleads guilty other than at arraignment. Additionally, we do not find that the trial court abused its discretion in denying defendant's motion to withdraw her guilty plea. Accordingly, we affirm the judgment of the appellate court, which affirmed the judgment of the circuit court.

¶ 44        Affirmed.