2023 IL App (4th) 220406-U

NO. 4-22-0406

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

FILED
May 4, 2023
Carla Bender
4th District Appellate Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| ETHAN STONE, | ) | No. 18CF122 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Turner and Steigmann concurred in the judgment.

**ORDER**

¶ 1   *Held*:   (1) Postplea counsel did not fail to strictly comply with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017).

(2) Defendant's claim that he should be allowed to withdraw his negotiated guilty plea because the trial court allegedly erred in ordering restitution is without merit.

¶ 2   Defendant, Ethan Stone, appeals from the trial court's judgment denying his motion to withdraw his negotiated guilty plea. Defendant argues (1) postplea counsel failed to strictly comply with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017) and (2) he should be allowed to withdraw his negotiated guilty plea because the court erroneously entered a restitution order without any supporting evidence. We affirm.

¶ 3                    I. BACKGROUND

¶ 4                    A. The Charges

¶ 5         In April 2018, the State charged defendant with one count of armed robbery (count I) (720 ILCS 5/18-2(a)(1) (West 2016)), two counts of home invasion (counts II and III) (*id.* § 19-6(a)(2)), and one count of residential burglary (count IV) (*id.* § 19-3). The State alleged defendant entered the dwelling place of Nicholas McDugle and Haley Nichols and intentionally caused injuries to both.

¶ 6                              B. The Fitness Evaluation

¶ 7         In August 2018, upon defense counsel's request, the trial court appointed Dr. Terry Killian to conduct a psychiatric evaluation of defendant to determine his fitness to stand trial. Dr. Killian subsequently interviewed defendant and prepared a "Forensic Psychiatric Evaluation" for the court's consideration. We will briefly discuss the relevant portions of the evaluation below.

¶ 8         According to the psychiatric evaluation, Dr. Killian began the interview speaking with defendant but, before long, a second persona named Eli Stokes "suddenly appeared." Dr. Killian stated he spoke with "Eli Stokes" for the remainder of the interview. Dr. Killian asked Eli Stokes "how many different personas [defendant] had." In response, Eli Stokes stated "he was only aware of a few other personas, and that there might be some personas who are children, saying that there did seem to be some who were 'younger versions of ourselves who will watch cartoons.' " Dr. Killian did not speak to any of the other personas during the interview. Ultimately, Dr. Killian concluded that it was his "very clear belief that [defendant] suffers from a form of multiple personality disorder in which [defendant] is the primary or host personality and Eli Stokes is one of [defendant's] alter personalities, functioning as the protector of [defendant]." With respect to defendant's fitness to stand trial, Dr. Killian indicated, "It is my opinion, within a reasonable degree of psychiatric certainty, that [defendant], despite his very obvious and severe

psychiatric problems, *** is psychiatrically fit to stand trial." (Emphasis omitted.) Dr. Killian continued, "Both [defendant] and Eli Stokes demonstrated a more than adequate understanding of the nature and purpose of the proceedings against him/them, and are capable of assisting in their own defense."

¶ 9                                    C. The Guilty Plea and Sentencing

¶ 10        On January 10, 2019, defendant pleaded guilty to all of the counts in exchange for the State's agreement to cap its sentencing recommendation at 26 years' imprisonment. The trial court accepted defendant's plea after finding it was knowingly and voluntarily made and then continued the matter for sentencing.

¶ 11        The trial court conducted the sentencing hearing on March 5, 2019. Neither party objected to the presentence investigation report (PSI) being admitted into evidence. The restitution section of the PSI indicated, "All victim-related information will be collected and presented by the State's Attorney's office." In presenting its sentencing recommendation, the State noted the following with respect to restitution:

> "MR. YEDINAK [(STATE'S ATTORNEY)]: *** [T]here is no objection to the State *** seeking restitution in this matter, the same numbers that are set forth in the co-defendant's case. This would be joint and several with *** [d]efendant, that being $6,389.80 for hospital bills with respect to Miss Nichols and then $1,028.96; and that's with respect to hospital bills for Mr. McDugle. So that's part of what the State would be seeking today, and I have orders prepared for Your Honor in that regard."

Ultimately, after merging certain counts, the trial court sentenced defendant to concurrent terms of 26 years' imprisonment on counts I and II. The court also entered a restitution order requiring defendant to pay $6389.80 to Nichols and $1028.96 to McDugle.

¶ 12                    D. The Initial Motion to Withdraw Guilty Plea

¶ 13          In March 2019, defendant *pro se* sent a letter to the trial court requesting to withdraw his guilty plea and raising several allegations of ineffective assistance of counsel. The court conducted a hearing on defendant's letter, at which defendant and defense counsel were present. The court noted it was treating the letter as a motion to withdraw guilty plea and discussed the allegations with defendant and counsel. The court denied the motion, and defendant subsequently appealed.

¶ 14          On appeal, defendant argued "he was effectively denied his right to counsel at the hearing on his *pro se* motion to withdraw his guilty plea because counsel had not fulfilled his obligations under Illinois Supreme Court Rule 604(d) (eff. July 1, 2017)." *People v. Stone*, 2021 IL App (4th) 190332-U, ¶ 18. This court agreed with defendant and remanded for further proceedings in strict compliance with Rule 604(d). *Id.* ¶ 25.

¶ 15                    E. The Instant Motion to Withdraw Guilty Plea

¶ 16          In February 2022, following this court's remand, defendant filed the instant motion to withdraw guilty plea. Defendant alleged the following, in relevant part:

          "5. That [d]efendant moves the Court to allow the defendant to withdraw his guilty plea.

          6. That [d]efendant denies the allegations of the information and states that he is not guilty of the charges brought against him.

7. That [d]efendant did not properly comprehend his rights and the waiver of his rights that he was executing and desires to proceed to trial. Defendant believes that he did not exercise reasoned and knowing judgment as one of his multiple personalities, Elijah[,] entered the guilty plea."

Defense counsel attached a Rule 604(d) certificate of compliance to the motion but did not attach any additional documentation.

¶ 17　　　　On April 11, 2022, the trial court conducted a hearing on the motion to withdraw guilty plea. In support of defendant's contention that one of his multiple personalities entered the guilty plea, defense counsel stated as follows:

"MS. METOYER [(DEFENDANT'S ATTORNEY)]: So I really don't have much to add. [Defendant] provided additional information that's addressed in paragraph 7. Dr. Killian in his report indicated that my client suffered from multiple personalities and that he actually interviewed two of them including my client Ethan Stone and—I'm sorry.

THE COURT: Yep.

(Pause)

MS. METOYER: Eli Stokes was [who] he identified as a person that Dr. Killian actually got to observe while interviewing my client Ethan Stone.

However, unfortunately my client I believe upon further reflection realized that it was neither Ethan nor Eli Stokes but instead it was actually Elijah and that if it had been my client Ethan Stone because he believes he's not guilty of this offense he never would have agreed to enter into that open plea."

At the conclusion of the hearing, the trial court denied the motion to withdraw guilty plea. In doing so, the court reasoned as follows:

"THE COURT: Okay. Well, the, as the State has indicated, the Court was aware of [defendant's multiple personality disorder] at the time of the sentencing in this matter; and I believe this was discussed at that time. Just let me—The sentencing took place on March 5th I believe, the original sentencing of 2019; and at that point I did have the forensic psychiatric evaluation; and I was able to take that into consideration. But there's nothing in that report that would indicate that this was not a knowing and voluntary plea of guilty to the charges at the time that the plea was made and accepted by the Court and more importantly at the time of sentencing."

¶ 18    This appeal followed.

¶ 19                    II. ANALYSIS

¶ 20    On appeal, defendant argues (1) postplea counsel failed to strictly comply with Rule 604(d) and (2) he should be allowed to withdraw his negotiated guilty plea because the trial court erroneously entered a restitution order without any supporting evidence.

¶ 21                    A. Rule 604(d)

¶ 22    Defendant argues that although postplea counsel filed a facially compliant Rule 604(d) certificate, she nonetheless failed to strictly comply with Rule 604(d) by failing to attach an affidavit or other documentation to the motion in support of the contentions raised therein. Specifically, defendant asserts the following two claims were based on facts not contained in the record, yet counsel failed to attach any documentation to adequately present them to the court: (1) the claim of actual innocence and (2) the claim that defendant did not knowingly plead guilty

because one of his multiple personalities, Elijah, pleaded guilty. The State argues postplea counsel strictly complied with Rule 604(d) because, despite defendant's assertion to the contrary, neither of the claims listed above are based on facts outside of the record, and therefore counsel had no duty to attach an affidavit or any additional documentation to the motion. "The question of whether defense counsel complied with Rule 604(d) is subject to *de novo* review." *People v. Neal*, 403 Ill. App. 3d 757, 760 (2010).

¶ 23    Illinois Supreme Court Rule 604(d) (eff. July 1, 2017) governs appeals from convictions entered on pleas of guilty. It provides a defendant must file the appropriate postplea motion within 30 days of the imposition of sentence and, in conjunction with the motion, the defendant's attorney must:

> "file with the trial court a certificate stating that the attorney has
>
> consulted with the defendant either by phone, mail, electronic
>
> means or in person to ascertain defendant's contentions of error in
>
> the sentence and the entry of the plea of guilty, has examined the
>
> trial court file and both the report of proceedings of the plea of
>
> guilty and the report of proceedings in the sentencing hearing, and
>
> has made any amendments to the motion necessary for adequate
>
> presentation of any defects in those proceedings." *Id.*

¶ 24    "Rule 604(d) is designed to ensure that any potential errors in the entry of a guilty plea are brought to the trial court's attention prior to the filing of an appeal." *People v. Easton*, 2018 IL 122187, ¶ 29. "[T]he rule's certificate requirement is meant to enable the trial court to ensure that counsel has reviewed the defendant's claim and considered *all* relevant bases for the motion to withdraw the guilty plea or to reconsider the sentence." (Emphasis in original.) *People*

*v. Tousignant*, 2014 IL 115329, ¶ 16. "It is firmly established that the certificate filed by counsel must strictly comply with the requirements of Rule 604(d). [Citation.] If the certificate fails to meet this standard, a reviewing court must remand the case to the trial court for proceedings that strictly comply with Rule 604(d)." *Easton*, 2018 IL 122187, ¶ 26.

¶ 25        Generally, to determine compliance with the rule, a court need only look to the face of the certificate itself. See, *e.g.*, *Neal*, 403 Ill. App. 3d at 760. However, a facially compliant certificate may be found in violation of the rule where it is undermined by the record. *Id.* ("[W]e may consider the record where it undermines the certificate filed."); see also *People v. Herrera*, 2012 IL App (2d) 110009, ¶ 13 ("Unless the record undermines the certificate, *** the only thing we consider in determining compliance with Rule 604(d) is the certificate itself."); *People v. Love*, 385 Ill. App. 3d 736, 739 (2008) ("Where *** the record impeaches the Rule 604(d) certificate, a remand for further proceedings is necessary."). "When the motion is based on facts that do not appear of record it shall be supported by affidavit ***." Ill. S. Ct. R. 604(d) (eff. July 1, 2017); see also *People v. Bridges*, 2017 IL App (2d) 150718, ¶ 9 ("As seen, under Rule 604(d), facts that do not appear of record must be supported by an affidavit. Thus, to fulfill her duty to amend defendant's motion, counsel had to attach an affidavit substantiating the new allegations.").

¶ 26        Here, as noted above, defendant argues the claims raised in his motion were based on facts not found in the record and, therefore, needed to be supported by affidavit or other evidentiary support. We disagree. First, defendant's "actual innocence" claim—"That [d]efendant denies the allegations of the information and states that he is not guilty of the charges brought against him"—amounts to nothing more than a bare denial of the charges and an expression of defendant's desire to withdraw his guilty plea and plead anew. He did not include

any specific factual allegations that could have been supported by affidavit or otherwise. Second, the claim related to Elijah was not based on facts outside of the record. The record, *i.e.*, Dr. Killian's forensic psychiatric evaluation, contained evidence of "alter personalities" other than Eli Stokes. It did not matter that defendant later attached the name "Elijah" to one of those other alter personalities. The court indicated it was aware of defendant's multiple personality disorder and had considered Dr. Killian's report, which referred to multiple "different personas." In the end, obtaining an affidavit from defendant or Dr. Killian that the persona that entered the guilty plea was named Elijah would have done nothing to assist the court in its decision. Thus, counsel did not need to obtain additional evidentiary support in order to have met her burden under Rule 604(d), and we find she strictly complied with the rule.

¶ 27                                    B. Restitution

¶ 28        Defendant also argues he should be allowed to withdraw his guilty plea because a manifest injustice occurred after he entered the plea in that the court entered a restitution order without any supporting evidence. He acknowledges he forfeited this argument by failing to object at the sentencing hearing and include it in a motion to withdraw guilty plea but nonetheless contends we may address it because second-prong plain error occurred. See *People v. Davis*, 145 Ill. 2d 240, 250 (1991) ("Generally, under Illinois Supreme Court Rule 604(d), any issue not raised by the defendant in his motion to withdraw the plea of guilty shall be deemed [forfeited] upon appeal."). However, we find it unnecessary to conduct plain error review, as defendant's claim is meritless irrespective of forfeiture.

¶ 29        Illinois Supreme Court Rule 604(d) (eff. July 1, 2017) provides, "No appeal shall be taken upon a negotiated plea of guilty challenging the sentence as excessive unless the defendant *** files a motion to withdraw the plea of guilty and vacate the judgment." "A

defendant does not have an automatic right to withdraw [his] guilty plea, as [a] plea of guilty is a grave act that is not reversible at the defendant's whim." (Internal quotation marks omitted.) *People v Burge*, 2021 IL 125642, ¶ 37. "[F]or a defendant to prevail in a challenge to a sentence entered pursuant to a negotiated plea agreement, the defendant must (1) move to withdraw the guilty plea and vacate the judgment, and (2) show that the granting of the motion is necessary to correct a manifest injustice." *People v. Evans*, 174 Ill. 2d 320, 332 (1996). "A defendant should not be allowed to withdraw his plea when the real basis for his withdrawal is that he is dissatisfied with the length of his sentence." *People v. Cunningham*, 286 Ill. App. 3d 346, 350 (1997).

¶ 30        In *People v. Millsap*, 2022 IL App (4th) 210192, this court addressed a similar argument to the one defendant now raises on appeal. In that case, the defendant argued "he should be allowed to withdraw his negotiated guilty plea because he was denied his right to a fair sentencing hearing, where the State allegedly requested a longer sentence by implication and the trial court relied on improper factors before sentencing [the] defendant." *Id.* ¶ 16. The defendant in *Millsap*, like the defendant here, relied on *People v. Johnson*, 2019 IL 122956, in support of his argument. However, we noted that "nothing suggests our supreme court, in *Johnson*, created a separate basis for withdrawal on the grounds of manifest injustice, whereby he should be permitted to withdraw his negotiated guilty plea because he was allegedly denied a fair sentencing hearing." *Millsap*, 2022 IL App (4th) 210192, ¶ 22. Ultimately, we found that, "[r]egardless of how he frames it, [the] defendant's motion to withdraw his plea boils down to a claim that, had the State and trial court not erred at sentencing, he should have received a lesser sentence." *Id.*

¶ 31    Here, the parties agree defendant entered a negotiated plea and restitution is "a component of the sentence." *People v. Birge*, 2021 IL 125644, ¶ 47. Thus, the question on appeal is whether, assuming, *arguendo*, the trial court erred in ordering restitution without evidentiary support, defendant is entitled to withdraw his guilty plea. We find he is not. As was the case in *Millsap*, defendant here is attempting to challenge the sentencing hearing as unfair and his sentence as excessive. Defendant is arguing that the State and the court deprived him of a fair sentencing hearing by, respectively, failing to present evidence of the actual economic loss suffered in this case and accepting the amount presented by the State. In effect, he is arguing his sentence is excessive because had the court not erred, it would have had no basis to impose restitution. In other words, "[d]efendant attempts to couch his claim in the language of an appeal of the trial court's denial of his motion to withdraw his plea, but *** its substance remains the same—defendant's dissatisfaction with his sentence and a claim that *** it exceeds what he should have received." *Millsap*, 2022 IL App (4th) 210192, ¶ 22.

¶ 32    Defendant asserts his restitution argument is not one of the "run-of-the-mill sentencing claims" such as the ones rejected in *Millsap* and should be viewed differently by this court. However, he provides no suggested framework for distinguishing between claims that could result in a defendant's withdrawal of his guilty plea and those that would not. Indeed, he acknowledges "it is difficult to pinpoint the type of subsequent sentencing error that would affect the knowingness of a prior guilty plea." Further, defendant fails to explain how the trial court's restitution order resulted in a "manifest injustice" as contemplated in *Evans*. *Evans*, 174 Ill. 2d at 322. While it appears the State did not present evidence in support of its request for restitution (see *Birge*, 2021 IL 125644, ¶ 49), the prosecutor's comments reflect the request was for less than $7500 and represented the victims' aggregate hospital bills. On its face, this request does

not appear manifestly inappropriate, and we cannot say the court's restitution order resulted in a manifest injustice.

¶ 33        Without clear authority establishing a defendant's ability to withdraw his guilty plea under circumstances such as those presented here, we adhere to our approach in *Millsap*. Accordingly, we reject defendant's restitution argument.

¶ 34                          III. CONCLUSION

¶ 35        For the reasons stated, we affirm the trial court's judgment.

¶ 36        Affirmed.