NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 210577-U

NO. 4-21-0577

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 2, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| COURTNEY MISCELLE KINARD, | ) | No. 20CF285 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | William G. Workman, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Justices Cavanagh and Steigmann concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Defendant's counsel labored under an actual conflict of interest when arguing his
              own ineffective assistance during postplea proceedings in connection with his act
              of misinforming defendant about the consequences of her guilty plea. The
              appellate court vacated the order denying defendant's motion to withdraw her
              guilty plea and remanded for the appointment of conflict-free counsel and further
              postplea proceedings.

¶ 2         In January 2021, defendant, Courtney Miscelle Kinard, entered a fully negotiated

guilty plea to criminal trespass to a residence (720 ILCS 5/19-4(a)(2) (West 2020)) in exchange

for the dismissal of other charges, 24 months of second chance probation, and community

service. Defendant moved to withdraw the plea, contending she did not understand that surrender

of her firearm owner's identification (FOID) card and thus her ability to legally possess a firearm

was a consequence of the plea. The trial court denied the motion based on defendant's

acknowledgment during the plea proceedings that "a conviction" could have an impact on her

ability to retain or obtain a firearm and because defendant did not show there was new evidence or that she was innocent.

¶ 3 On appeal, defendant contends the trial court erred because the record establishes her trial counsel rendered ineffective assistance by affirmatively misinforming her of the consequences of the plea when counsel told her "a conviction" would not enter at the time of the plea and she would be able to keep her FOID card. Thus, defendant maintains her counsel inaccurately led her to believe she would be able to retain her FOID card and legally possess a firearm while serving probation. In the alternative, she argues counsel was ineffective during the postplea proceedings when he acted under an actual conflict of interest by failing to sufficiently argue he provided ineffective assistance in connection with the guilty plea, thus denying her of her constitutional right to conflict-free counsel.

¶ 4 For the reasons that follow, we agree counsel labored under an actual conflict of interest when he argued the postplea motion, which also led the trial court to apply an inaccurate rule of law in denying the motion to withdraw. Accordingly, we vacate the court's denial of defendant's motion to withdraw her guilty plea and remand for the appointment of conflict-free counsel and further postplea proceedings.

¶ 5                                   I. BACKGROUND

¶ 6 In April 2020, the State charged defendant with a Class 4 felony, criminal trespass to a residence, alleging she knowingly and without authority entered the residence of the victim, Brian Greer, when she knew or had reason to know that one or more persons were present. The State also charged defendant with a Class A misdemeanor, battery (*id.* § 12-3(a)(1)), alleging she caused bodily harm to Greer by striking him with shovel, and a Class A misdemeanor, criminal damage to property (*id.* § 21-1(a)(1)), alleging she damaged a vase and drywall. On January 6,

- 2 -

2021, defendant entered a fully negotiated guilty plea to the trespass charge in exchange for dismissal of the other charges and 24 months of "second chance probation."

¶ 7 At the plea hearing, the trial court informed defendant she was pleading guilty to a Class 4 felony punishable by 1 to 3 years of incarceration, with the possibility of up to 30 months of probation or conditional discharge. Defendant expressed concern about the offense being a felony and asked whether it would show on her record during a background check. Counsel stated if she successfully completed second chance probation, it would never be on her record, and a brief recess was taken for counsel to discuss the matter with defendant. When proceedings resumed, defendant stated she still wanted to proceed and had no questions about the charge.

¶ 8 The trial court fully admonished defendant of her rights and determined the voluntary nature of the plea, including ascertaining that no one promised her anything other than the promises made in the plea agreement. The court then told defendant:

> "[A]s a result of a conviction, any future conviction could have an increased penalty and there could be a higher possibility of a consecutive sentence. As a result of a conviction, there could be a registration requirement that restricts where you may work, live or be present. As a result of a conviction, there could be an impact upon your ability to retain or obtain housing in the public or private market, to retain or obtain employment, or to retain or obtain a firearm, an occupational license or a driver's license."

The court asked defendant if she had "[a]ny questions about any of those," and she responded, "No."

¶ 9     In providing the factual basis for the plea, the State offered that Lashantae Gibson, defendant's cousin and codefendant, was previously in a dating relationship with Greer, and they shared an infant child. On March 31, 2020, Gibson was angry due to a custody issue involving the child, and she and defendant forced entry into Greer's residence without permission. Defendant stipulated to the sufficiency of the factual basis and waived preparation of a presentence investigation.

¶ 10    The trial court accepted the plea and sentenced defendant in accordance with the plea agreement. The court advised defendant of her appeal rights, including the requirement that, to appeal, she must first provide a written motion to withdraw the plea, and that "any claim of error not cited in that written motion would be deemed to be waived or given up later on appeal." Defendant stated she had no questions about her appeal rights or any other aspect of the plea hearing.

¶ 11    The record contains a signed plea agreement and jury waiver, dated January 6, 2021, stating defendant agreed to plead guilty in exchange for second chance probation and the dismissal of the other charges. A line pertaining to "[a]dditional conditions" was silent concerning any matters pertaining to possession of firearms or a FOID card. Also on that date, defendant signed an application for waiver of criminal court assessments. The record shows those documents were signed before the court accepted the plea. Also appearing in the record is an "Order For Probation" signed by defendant. That order stated in part that defendant was sentenced to 24 months of probation upon the condition that, during that period, defendant shall "[n]ot possess a firearm or other dangerous weapon." The order further stated, "[i]n all felony and/or domestic battery convictions, the defendant shall surrender his/her [FOID] card to the

Probation Officer as directed." The record does not show when that document was signed in relation to the trial court's acceptance of the plea.

¶ 12 On January 21, 2021, defendant's trial counsel filed a motion to withdraw the plea, stating only "[d]efendant did not understand the consequences of her plea." On February 10, 2021, the trial court held a hearing on the motion.

¶ 13 At the hearing, counsel told the trial court there were aspects of the probation terms that defendant did not understand. Defendant testified that, shortly after pleading guilty, she went "up to [p]robation to do an intake." Afterwards, she "came by the [p]ublic [d]efender's [o]ffice almost immediately" and informed them she wished to withdraw her plea. When asked what it was about the terms and conditions of probation she did not understand, defendant stated:

"I didn't know that I was going to have to give my DNA and it has to be sent to the State. I still don't understand why. I asked them why. All they told me was because it has to be entered into their database. And if I finish probation, then they will take it or send it back to me. I don't believe that.

Then, before I said I was going to agree to probation, I asked the Public Defender about my FOID card."

Counsel asked defendant if she recalled the admonitions given at the plea hearing, during which she was told a conviction for the offense could affect her ability to own a firearm. Defendant replied, "[r]ight. And I was under the—like under the influence that since I am not convicted, that that wouldn't, like, affect my FOID card." The following colloquy then occurred:

"Q. And what, if anything, did you learn from Probation?

A. As soon as I got up to Probation, they said I had to hand over my FOID card right away. And I was not aware of that. And that is what I asked before I agreed to my probation term.

Q. And I believe in our discussions I confirmed to you my understanding that a conviction could affect your FOID card. And I affirmed for you that if successfully completed, Second Chance Probation would not result in a conviction?

A. Right. And then I would have to give it up if I didn't complete the probation.

Q. Were there any other specific terms or conditions of probation that you weren't aware of?

A. Yes. I wasn't aware that the probation officer was going to periodically come to my home where me and my kids are. I did not want my kids to all see or be aware of anything like that. I wasn't aware of that. I wasn't aware that I have to get permission to go in and out [of] the state whenever I feel like I need to travel. Then, I wasn't aware of—what else was it on there. That, and what else. Those were, like, the pretty main ones for me.

But it was under the terms like I was just going to have to give them three clean drug tests, and I was going to have to go check in, and I was going to have to pay. That was my understanding of what probation was going to be until I got up there and they, you know, like they explained everything that I would have to agree to. And I wasn't comfortable with it."

Counsel then asked defendant "specifically, had you been aware that entering into that agreement would have resulted in the immediate loss of your ability to legally possess a firearm in Illinois, would that have changed your decision under the agreement?" Defendant replied, "Yes. That, and leaving out of the state for permission, the DNA sample being sent to the police. All of that, I wouldn't have agreed to the terms of probation; I would have just went to trial."

¶ 14 On cross-examination, the State showed defendant a copy of the probation order and asked if it had defendant's signature at the bottom. Defendant confirmed it was her signature. The State asked no other questions.

¶ 15 Defense counsel verified defendant came to his office immediately after visiting probation to tell him she wished to withdraw her plea. Counsel stated, "there wasn't any delay or gamesmanship here. She clearly didn't understand." Counsel further told the trial court:

"With respect to some of the conditions of probation, the one in particular that I think is most troubling that she—we did address directly prior to the plea was her concern with respect to her ability to possess a FOID card. The—she did ask me about that specifically, and I advised her and I believe, using parallel language to the admonishments given by the Court, that a conviction for this offense could potentially result in—inhibit directly, something that would interfere with her ability to legally possess a firearm. However, I also explained that by the mechanism of Second Chance Probation, a conviction was not entering immediately as a result of a plea, and were she to complete the program successfully, no conviction would enter. Essentially, assuring her my understanding that at this point, by entering that agreement, there would not be an immediate effect on her ability—on her FOID card. And so apparently from what

she was told, that is not the case. It is certainly, and the other conditions she mentioned are also of concern. But that one in particular is something that I can—I can recall concerned her going in. And she was, based on the fact that she entered into that agreement with the understanding gotten from her attorney and then from what she heard the admonishments, that this was not going to have this effect, I think that had the effect of making that waiver not fully known."

¶ 16 Defense counsel also disagreed with the probation office and the trial court that a conviction entered upon the plea, telling the court he believed the matter was "a deferred judgment, in which no conviction is entered at the time of the plea." The court asked, "[h]ave you talked to your client? Do you think that this is going to go away if I allow her to withdraw her plea agreement?" Counsel responded, "she discussed immediately after entering the plea that this was a condition that was a nonstarter for her. Based on our limited discussions since then, it is her intention if this doesn't change, to take the matter to trial." Counsel stated he thought there was potentially room for some additional negotiation, and the court replied, if it allowed defendant to withdraw the plea, the matter was going to trial. Counsel stated, "[t]hat is her request at this time." The court continued the matter to look at the transcript of the plea hearing.

¶ 17 On February 17, 2021, the trial court denied the motion to withdraw the plea. The court stated:

"Well, the court did in fact admonish the defendant as to the consequences of her plea. She acknowledged those at the time of the plea. And even though she was given second chance probation, the consequences that she complains of still apply even though she's given second chance probation. The final judgment is not entered until after the completion of the second chance probation. If she

successfully completes second chance probation there will not be a judgement entered. But at this time there has already been a finding of guilt pursuant to that plea. And those admonishments that were given at the time of the plea indicated to the defendant the consequences."

¶ 18    Defendant appealed. Trial counsel did not file a certificate as required by Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). On May 26, 2021, the Office of the State Appellate Defender filed an agreed motion for summary remand for compliance with Rule 604(d). This court granted the motion and remanded for the filing of a Rule 604(d) certificate, the opportunity to file a new postplea motion if counsel concluded one was necessary, a new judgment, new notice of appeal, and strict compliance with Rule 604(d).

¶ 19    On remand, trial counsel filed a facially valid Rule 604(d) certificate. At the hearing on the matter, counsel declined to amend the motion to withdraw the plea or file a new motion and proceeded on the original motion. Counsel repeated his argument that defendant expressed concern whether a conviction would affect her ability to have a FOID card and said he told her the matter was not a conviction on the record and instead was a deferred judgment. Counsel stated he told defendant "she would not be required by probation upon the entry into second chance probation, to surrender her FOID card, as long as a conviction did not enter on her record." Counsel stated, "I believed, and this may have turned out to be erroneously, that she would be allowed to keep her FOID card and possess a weapon pursuant to FOID registry." Counsel again confirmed that:

    "Immediately upon entering the plea and going up to probation, during the intake process she was informed by probation that she would need to surrender her FOID card, and she, right away, came back to our office and said, you said

- 9 -

this wasn't going to happen. This was a significant issue for me, and I—had I known this I would not have entered into the agreement."

Counsel further told the court, "I do believe that her waiver was given conditional upon the advice, however poor it may have been for myself, that this would likely not affect her FOID status. It turns out it did." Counsel argued the plea was not knowing and voluntary, given the fact that defendant was in good faith following counsel's advice that a conviction would be deferred, and the court's admonitions addressed the matter in terms of the inability to possess a firearm only when "a conviction" was entered.

¶ 20     The State argued that, even if counsel's representation was deficient, defendant was required to show the result would have been different, "[m]eaning that she would have had to show some sort of claim of innocence, or a plausible defense," which she did not do. When counsel was asked if he had "[a]ny rebuttal to that," he stated, "[n]o." The trial court held the impact on defendant's FOID card and ability to possess a firearm was collateral to the plea and stated defendant was advised of the potential consequences of pleading guilty. The court also stated, "[t]here is actually no indication that there is any new evidence or claim of innocence in this matter." Thus, the court again denied the motion.

¶ 21     This appeal followed.

¶ 22                                    II. ANALYSIS

¶ 23     Defendant contends the trial court erred in denying her motion to withdraw the plea based on ineffective assistance of counsel during the plea proceedings. She argues counsel affirmatively misrepresented the effect of second chance probation on her ability keep her FOID card and legally possess a firearm by telling her a conviction would not enter unless she failed to complete probation. She further argues the court's admonitions did not cure the misapprehension

- 10 -

because the court did not explain at the time of the plea that, contrary to counsel's representations, a conviction entered immediately upon entry of the plea. Defendant also argues her counsel rendered ineffective assistance by inadequately representing her in the postplea proceedings while under an actual conflict of interest and by failing to make necessary amendments to the motion to withdraw the plea in compliance with Rule 604(d).

¶ 24                                  A. Denial of the Motion to Withdraw the Plea

¶ 25        Defendant first contends the trial court erred when it denied the motion to withdraw her plea because her counsel rendered ineffective assistance by affirmatively misrepresenting to her the consequences of her plea. She argues counsel's advice was deficient and the record shows prejudice because she would not have entered the plea but for counsel's misrepresentation about the status of her ability to retain her FOID card and legally possess a firearm.

¶ 26        "A defendant does not have an automatic right to withdraw her guilty plea, as '[a] plea of guilty is a grave act that is not reversible at the defendant's whim.' " *People v. Burge*, 2021 IL 125642, ¶ 37, 195 N.E.3d 1135 (quoting *People v. Reed*, 2020 IL 124940, ¶ 47, 182 N.E.3d 64). "Rather, a defendant must establish a manifest injustice under the facts involved." *Id.* "A guilty plea may be withdrawn where it was entered through a misapprehension of the facts or law or where there is doubt as to the guilt of the accused and justice would be better served by conducting a trial." *Id.* "In order to vacate a plea based on a misapprehension of law or fact, the defendant must establish, under an objective standard, that her mistaken beliefs or impressions were reasonably justified under the circumstances as they existed at the time of the plea." *Id.* "We review the trial court's decision to grant or deny a motion to withdraw a guilty plea for an abuse of discretion" *Id.*

- 11 -

¶ 27      Generally, " '[d]ue process does not require that the defendant be informed of the collateral consequences of a guilty plea.' " *Id.* ¶ 38 (quoting *People v. Delvillar*, 235 Ill. 2d 507, 520-21, 922 N.E.2d 330, 338 (2009)). "A collateral consequence is one that does not relate to the length or nature of the sentence imposed on the basis of the plea." *Id.* " 'Examples of collateral consequences have included loss of employment, loss of voting rights, license suspension, and dishonorable discharge from the military.' " *Id.* (quoting *People v. Hughes*, 2012 IL 112817, ¶ 36, 983 N.E.2d 439); see also *Johnson v. Department of State Police*, 2020 IL 124213, ¶ 47, 161 N.E.3d 161 (noting loss of a FOID card was a collateral consequence of the defendant's conviction, which was entered following a guilty plea). Here, the parties do not dispute that loss of a FOID card or a prohibition against possessing a firearm is a collateral consequence of the plea.

¶ 28      Because loss of a FOID card and the resulting inability to possess a firearm is a collateral consequence of the plea, any failure to admonish defendant in that regard does not affect the voluntariness of her plea. See *Burge*, 2021 IL 125642, ¶ 38. However, affirmative misrepresentations or misleading advice by counsel as to the collateral consequences of a guilty plea may require reversal. See *People v. Correa*, 108 Ill. 2d 541, 551, 485 N.E.2d 307, 311 (1985). Even when the trial court gave proper admonitions, the effect of erroneous and misleading advice of counsel may render a plea involuntary. See *id.* at 552-53. Such a determination depends on whether the defendant had the effective assistance of counsel. *Id.* at 549.

¶ 29      A criminal defendant is entitled to the effective assistance of trial counsel at all critical stages of the criminal proceedings, including guilty plea proceedings. *Hughes*, 2012 IL 112817, ¶ 44. Under the test articulated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984),

to establish ineffective assistance of counsel, a defendant must establish that his or her counsel's performance fell below an objective standard of reasonableness, resulting in prejudice.

¶ 30        In ineffective-assistance of counsel challenges arising from the guilty-plea process, the first prong of the *Strickland* standard remains the same. *People v. Brown*, 2017 IL 121681, ¶ 26, 102 N.E.3d 205. However, for purposes of the second prong, the defendant " 'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " *Id.* (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). When applying the second prong, " '[a] conclusory allegation that a defendant would not have pleaded guilty and would have demanded a trial is insufficient to establish prejudice' for purposes of an ineffectiveness claim." *Id.* (quoting *People v. Valdez*, 2016 IL 119860, ¶ 29, 67 N.E.3d 233).

¶ 31        Previously, in *People v. Rissley*, 206 Ill. 2d 403, 459, 795 N.E.2d 174, 205 (2003), our supreme court held that, in the context of a guilty plea, a defendant's bare assertion that, but for plea counsel's bad advice, he or she would have not pleaded guilty, unaccompanied by either a claim of innocence or the statement of any plausible defense that could have been raised had the defendant opted for a trial, failed to show prejudice. Our supreme court also held the same in *People v. Hall*, 217 Ill. 2d 324, 335-36, 841 N.E.2d 913, 920 (2005). However, following the decision of the United States Supreme Court in *Lee v. United States*, __ U.S. ___, 137 S. Ct. 1958 (2017), our supreme court specifically held the previous standard derived from *Rissley* and *Hall* requiring a showing of actual innocence or a plausible defense was no longer applicable to cases involving trial counsel's error in advising a defendant of the consequences of a guilty plea. *Brown*, 2017 IL 121681, ¶ 46. Instead, when a defendant's ineffective assistance claim alleges counsel's deficient performance caused the defendant to accept a plea, the defendant must

convince the court that a decision to reject the plea bargain would have been rational under the circumstances. *Id.* ¶ 48.

¶ 32    In showing that a decision to reject the plea bargain would have been rational, "a defendant is not required to assert actual innocence or a plausible defense, in order to prevail on a claim of ineffective assistance of plea counsel." *People v. Jones*, 2021 IL App (1st) 182392, ¶ 69, 195 N.E.3d 705 (citing *Brown*, 2017 IL 121681, ¶¶ 34-36). Instead, we consider the specific circumstances of the defendant's case. *Brown*, 2017 IL 121681, ¶ 41. However, while a defendant is " 'not required' " to show actual innocence or a plausible defense, that does not render consideration of claims of innocence or possible defenses irrelevant. *Jones*, 2021 IL App (1st) 182392, ¶ 69. When considering prejudice and the consequences of pleading guilty, a court may still consider the likelihood of conviction and the likely consequences of a defendant's decision to reject the offered plea. *Id.* (citing *Brown*, 2017 IL 121681, ¶¶ 35-36).

¶ 33    Addressing defendant's argument on appeal, we first note counsel misrepresented the law to defendant. Section 5-6-3.4(a) of the Unified Code of Corrections (Code) (730 ILCS 5/5-6-3.4(a) (West 2020)) provides the trial court may, without entering judgment, sentence the defendant to second chance probation. When the court does so, it shall defer further proceedings in the case until the conclusion of a period of not more than 24 months of probation. *Id.* § 5-6-3.4(b). The Code specifically provides conditions for the term of probation, including that the defendant shall refrain from possessing a firearm. *Id.* § 5-6-3.4(c)(2). Upon fulfillment of the conditions of probation, the court "shall discharge the [defendant] and dismiss the proceedings." *Id.* § 5-6-3.4(f). However, "[a] disposition of probation is considered to be a conviction for purposes of imposing the conditions of probation and for appeal." *Id.* § 5-6-3.4(g). A discharge

and dismissal after fulfillment of the conditions of probation is not a conviction for purposes of disqualifications or disabilities imposed by law upon conviction of a crime. *Id.*

¶ 34 Here, the first prong of the *Strickland* standard is easily established. Applying the Code, counsel affirmatively misrepresented the law when he told defendant a conviction would not enter at the time of the plea and that the plea would not affect defendant's ability to keep her FOID card and legally possess a firearm while she served probation. The Code is clear that defendant could not possess a firearm as a condition of her second chance probation. Moreover, counsel's inaccurate advice was not cured by the trial court's admonishment that "a conviction" could have an adverse effect on defendant's ability to possess a firearm because counsel led defendant to believe "a conviction" would not enter at the time she pleaded guilty. Although defendant signed an "order" with conditions of probation stating she could not possess a firearm, the record does not show it was signed before the court accepted the plea, and its designation as an "order" indicates it was postplea document. Further, the order also referred to possession of the FOID card in relation to a "conviction." Thus, counsel's representation was deficient and not cured by the trial court's admonishments or documents signed by defendant. The more difficult question, however, is whether defendant suffered prejudice from counsel's misrepresentation, such that a decision to reject the plea bargain would have been rational under the circumstances.

¶ 35 Defendant made clear her ability to possess a firearm and the status of her FOID card was important to her. The record also supports defendant's assertion she would have chosen to go to trial had she not been misinformed. However, the record is also generally silent about her reasons *why* the matter was important to her, which is necessary in order for us to determine whether her rejection of the plea agreement and the corresponding risk of conviction would be rational under the circumstances. We note the trial court did not address the issue applying the

correct legal standard, in part because counsel failed to argue the matter using the correct standard. However, we also note that, without taking the plea deal, defendant still would have been eligible for probation or conditional discharge if convicted. See 730 ILCS 5/5-4.5-45(d), 5-4.5-55(d) (West 2020). But she also faced a potential period of incarceration. *Id.* §§ 5-4.5-45(a), 5-4.5-55(a). She further would have been deprived of her FOID card and ability to possess a weapon during any sentence of probation or conditional discharge and faced permanent deprivation of both upon a conviction of the Class 4 felony. See 430 ILCS 65/8(c) (West 2020) (providing for revocation of a FOID card after conviction of a felony). Thus, the only way defendant could assure she retained her FOID card and ability to legally possess a firearm would be through an acquittal. In that regard, the factual basis for the plea in the record is sparse. On the face of the record, it would appear defendant would likely be found guilty, resulting in the possible permanent loss of her FOID card, along with facing the risk of incarceration, which leads us to question whether rejection of the plea agreement would be rational under the circumstances.

¶ 36 However, we need not decide whether defendant's choice to reject the plea bargain would have been rational because, as we address below, we agree with defendant's argument that, when counsel argued his own ineffectiveness, he deprived defendant of her constitutional right to conflict-free counsel.

¶ 37 B. Ineffective Assistance of Postplea Counsel and Conflict of Interest

¶ 38 Defendant argues counsel rendered ineffective assistance during the postplea proceedings because, when he presented what was in effect a claim of his own ineffective assistance, he failed to do so adequately, creating an actual conflict of interest.

¶ 39        "A defendant's right to effective assistance of counsel includes a right to representation that is free from conflicts of interest." *People v. Hampton*, 2021 IL App (5th) 170341, ¶ 111, 195 N.E.3d 1260 (citing *People v. Hernandez*, 231 Ill. 2d 134, 142, 896 N.E.2d 297, 303 (2008)). "A conflict of interest can be either *per se* or actual." *Id.* (citing *People v. Brown*, 2017 IL App (3d) 140921, ¶ 30, 83 N.E.3d 31). "If a *per se* conflict exists, the defendant is not required to demonstrate that counsel's performance was adversely affected by the conflict. 'In other words, a defendant is not required to show actual prejudice when a *per se* conflict exists.' " *Id.* (quoting *Hernandez*, 231 Ill. 2d at 143). However, the majority of appellate court districts have declined to find the existence of a *per se* conflict of interest when counsel is required to argue his or her own ineffectiveness. See *People v. Garcia*, 2018 IL App (5th) 150363, ¶ 30, 116 N.E.3d 1082; *People v. Zareski*, 2017 IL App (1st) 150836, ¶¶ 36-38, 84 N.E.3d 527; *People v. Sullivan*, 2014 IL App (3d) 120312, ¶¶ 44-46, 6 N.E.3d 888; *People v. Perkins*, 408 Ill. App. 3d 752, 762, 945 N.E.2d 1228, 1237 (2011). This court has also indicated a similar view. See *People v. Jones*, 219 Ill. App. 3d 301, 304, 579 N.E.2d 1192, 1194 (1991) (declining to interpret *People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984), as holding there is a *per se* conflict of interest any time an attorney raises his or her own ineffectiveness). Thus, we hold defendant must show an actual conflict of interest occurred. We review *de novo* the question of whether the defendant's counsel was laboring under a conflict of interest. *Hampton*, 2021 IL App (5th) 170341, ¶ 111 (citing *Garcia*, 2018 IL App (5th) 150363, ¶ 26).

¶ 40        To establish an actual conflict of interest, a defendant must demonstrate the conflict adversely affected his or her counsel's performance. *Id.* A defendant need not prove prejudice, but the "the defendant must point to a specific defect in counsel's performance that is attributable to the conflict." *Id.*; *People v. Morales*, 209 Ill. 2d 340, 349, 808 N.E.2d 510, 515

(2004). The following appellate court decisions both illustrate circumstances in which trial counsel may be found to be acting under an actual conflict of interest.

¶ 41    In *Brown*, a jury convicted the defendant of domestic battery. *Brown*, 2017 IL App (3d) 140921, ¶ 1. Following trial, the defendant filed a *pro se* letter stating he wanted to appeal the jury's verdict because one of his witnesses was not called to testify. Before sentencing, defense counsel made an oral motion to set aside the jury's verdict and, as part of the basis for the motion, adopted part of the defendant's letter with respect to failure to call a witness. *Id.* ¶¶ 12-13. The trial court asked counsel whether she had any witnesses she wanted to present with respect to the motion, and counsel told the court that she would proceed through proffer instead. Counsel said the defendant had told her about two occurrence witnesses. Counsel initially thought the two individuals were actually only one person, and she could not locate the person because the defendant did not have an address. However, at trial, counsel learned the defendant had described two occurrence witnesses, but by then the trial had already begun and it was too late to add the additional witness. *Id.* ¶ 14. Counsel told the court the defendant believed if either witness had been called, they would have been able to testify with respect to his innocence. Counsel concluded,

> " 'So we'd ask the [c]ourt to reconsider the verdict or to set aside the verdict of the jurors on the basis that this was nothing short of just a miscommunication and that it's a miscommunication between him and me that led to him not being able to call all the people that could be put on, the best case to determine whether he in fact was guilty or innocent.' " *Id.*

¶ 42    The trial court denied the motion, stating that a miscommunication between counsel and the defendant was not a proper basis for setting aside the jury's verdict *Id.* ¶ 15. The

court also concluded that, based on counsel's summary of events, the defendant failed to provide his counsel with enough information to contact the witnesses. *Id.* ¶ 15.

¶ 43    On appeal, the defendant argued in part that his counsel proceeded under an actual conflict of interest when she was required to argue her own ineffectiveness. *Id.* ¶ 28. The appellate court agreed, concluding the defendant's counsel had an actual conflict of interest because the motion to set aside the verdict was premised on the single issue of counsel's own ineffectiveness in failing to call the defendant's witnesses. *Id.* ¶ 32. The court noted that, to prevail, defense counsel was obligated to show that her performance was constitutionally deficient and that, but for her deficient performance, a reasonable likelihood existed that the result of the trial would have been different. *Id.* However, counsel failed to make any effort to show either prong of ineffective assistance and instead placed the blame on the defendant and a miscommunication, a characterization that led to the denial of the motion. *Id.* ¶ 33. The court also noted counsel did not present any evidence concerning the missing witnesses' potential testimony. *Id.* The court concluded counsel's errors were attributable to the conflict of interest inherent in arguing her own ineffectiveness. Thus, the appellate court vacated the trial court's denial of the defendant's posttrial motion and remanded the matter for the appointment of conflict-free counsel and a new posttrial motion. *Id.* ¶ 34.

¶ 44    In *Garcia*, a jury convicted the defendant of attempted burglary. *Garcia*, 2018 IL App (5th) 150363, ¶ 1. Before trial, the circuit court granted a defense motion *in limine*, barring the State from presenting other-crimes evidence during trial. *Id.* ¶ 8. However, at trial, the State presented two videotaped confessions containing inadmissible and prejudicial evidence of other crimes involving the defendant, and defense counsel failed to object, thus exposing the jury to the prejudicial other-crimes evidence. Counsel raised the error in a posttrial motion,

characterizing it as plain error instead of ineffective assistance of counsel. *Id.* ¶ 20. The trial court denied the posttrial motion. *Id.* ¶ 24. On appeal, the defendant argued, in part, his trial counsel had an actual conflict of interest during the posttrial hearing because counsel had to argue that his own error resulted in an unfair trial. *Id.* ¶ 26.

¶ 45 The appellate court agreed and noted, like in *Brown*, the defendant's posttrial motion was based on a single issue—counsel's failure to object to the inadmissible and prejudicial portions of the interrogation videotapes, which included evidence of other crimes and bad acts. Thus, for the posttrial motion to prevail, defense counsel was obligated to show under *Strickland* that his performance was deficient and the deficient performance so prejudiced the defendant that he was denied a fair trial. *Id.* ¶ 39. However, the defense counsel did not make any effort to show either prong of the *Strickland* standard was satisfied. The court found the record established the failure to do so was attributable to the conflict of interest inherent in counsel having to argue his own ineffectiveness. *Id.* Instead of zealously arguing his own ineffectiveness, counsel told the trial court that he had assumed the videos the State would show to the jury were " 'probably redacted.' " *Id.* ¶ 40. When asked if he was going to put on any evidence, counsel declined to do so, even though much of the pretrial discussion about the admission of the videotapes occurred off the record. Instead of presenting evidence, counsel argued that the video was prejudicial regardless of which party sought to introduce the evidence because its admission was " 'plain error' " and stated he was not " 'casting blame on anyone.' " *Id.* ¶ 41. Thus, the appellate court held defense counsel's failure to present evidence was attributable to his reluctance to prove his own ineffectiveness. Based on the record, the court could not find that the defendant's counsel vigorously and zealously asserted grounds for a new trial because of counsel's admitted mistake. *Id.* ¶ 42.

¶ 46          The *Garcia* court also rejected an argument that counsel was required to specifically advance an argument couched in terms of ineffective assistance of counsel to create an actual conflict of interest. In doing so the court stated, "[a] criminal defendant has a constitutional right to the undivided loyalty of counsel, free of conflicting interests." *Id.* ¶ 47. The court further stressed,

> "[w]hen a criminal defendant's attorney is aware that he has committed an error or made an omission during trial and that the error or omission arguably resulted in the defendant receiving an unfair trial, the attorney has an obligation to bring the error or omission to the trial court's attention and zealously argue that the mistake warrants a new trial." *Id.*

The court recognized that, "[i]f counsel zealously and effectively argues for a new trial based on his error or omission, the defendant has not been denied his constitutional right to conflict-free counsel." *Id.* (citing *Perkins*, 408 Ill. App. 3d at 762). But, "when counsel fails to adequately assert an ineffective assistance of counsel claim on the defendant's behalf and the record indicates that counsel's failure to do so was influenced by counsel's reluctance to argue his own ineffectiveness, the defendant has been denied his constitutional right to conflict-free counsel." *Id.* ¶ 48. Ultimately, the *Garcia* court concluded that, because counsel was reluctant to cast blame on anyone and declined the trial court's request to present evidence on the issue, resulting in the denial of the posttrial motion, the record indicated an actual conflict of interest, and the defendant was denied his constitutional right to conflict-free counsel. *Id.* ¶ 49.

¶ 47          We find *Brown* and *Garcia* applicable. Although *Brown* and *Garcia* involved actual conflicts of interest at trial, while here the conflict was during postplea proceedings, that distinction is irrelevant, as defendant is entitled to conflict-free counsel throughout the

proceedings, including at postplea proceedings, and defendant's plea did not waive that right. See *People v. Friend*, 341 Ill. App. 3d 139, 141, 793 N.E.2d 927, 929 (2003).

¶ 48        As in *Brown* and *Garcia*, counsel here filed a motion directly implicating ineffective assistance based on his affirmative misrepresentation of the law to defendant. However, while the matter was clearly an issue of ineffective assistance, counsel never specifically labeled it as such and indicated reluctance to do so. For example, in the first motion, when counsel filed the motion to withdraw the plea, he wrote only, "[d]efendant did not understand the consequences of her plea." At the first hearing, counsel presented the issue as one based on defendant's lack of understanding of the plea. Counsel then showed reluctance to specifically acknowledge his failure to determine that the law provided "a conviction" would enter upon the plea. Thus, his error affected defendant's ability to legally possess a firearm or retain her FOID card, despite the statutory provisions clearly providing otherwise. Instead, counsel told the trial court his "understanding" was that, by entering the plea agreement, there would not be an immediate effect on defendant's FOID card, but he added, "apparently from what she was told, that is not the case"; thus, he indicated that he placed blame on the probation office. Counsel also stated his disagreement that that a conviction entered right away upon the plea, telling the trial court he believed the matter was "a deferred judgment, in which no conviction is entered at the time of the plea." Yet, as previously noted, the statutory scheme clearly provided otherwise. The court denied the motion to withdraw the plea without addressing the claim under the rubric of ineffective assistance of counsel.

¶ 49        Then, when the matter was remanded for compliance with Rule 604(d), counsel stood on the original motion. At the hearing, counsel again implicated an ineffective assistance claim, stating, "I do believe that her waiver was given conditional upon the advice, however poor

it may have been for myself, that this would likely not affect her FOID status. It turns out it did." However, counsel never fully argued the matter under the correct legal principles pertaining to ineffective assistance. Instead, he was equivocal, stating, "I believed, and this may have turned out to be erroneously, that she would be allowed to keep her FOID card and possess a weapon pursuant to FOID registry." Nor did he elicit testimony from defendant to fully support an ineffective assistance claim, specifically whether it would be rational for defendant to reject the plea agreement. The result is that counsel failed to properly present a claim correctly applying the *Strickland* standards to the trial court. That failure was compounded when the State incorrectly told the court that defendant must show a claim of innocence or a plausible defense, which, as previously discussed, was no longer the applicable law. The court asked counsel if he had any rebuttal and, instead of correcting the State, which would require application of the law concerning ineffective assistance, counsel declined to rebut the State's assertion. The result was that the court applied incomplete and incorrect law when it denied the motion, stating defendant had not shown new evidence or a claim of innocence.

¶ 50          Accordingly, like in *Brown* and *Garcia*, we conclude the record indicates counsel's performance during the postplea proceedings was attributable to counsel's reluctance to argue his own ineffectiveness. *Garcia*, 2018 IL App (5th) 150363, ¶ 42; *Brown*, 2017 IL App (3d) 140921, ¶ 33. Attorneys are not obligated to raise issues they believe lack merit, including the issue of their own ineffectiveness. However, once an attorney chooses to include that issue in a posttrial motion, he or she is under an obligation to argue the issue "zealously and competently" in proceedings on the motion. *Id.* ¶ 34. Here, counsel failed to fully argue the matter, which directly led to the trial court applying the wrong legal standard. Thus, we determine counsel was acting under an actual conflict of interest.

¶ 51 Because there was an actual conflict of interest, we are required to vacate the order denying defendant's motion to withdraw her plea and remand for the appointment of conflict-free counsel, who may file a new motion and raise any issues they find have merit. See *Garcia*, 2018 IL App (5th) 150363, ¶ 49. We emphasize that our ruling here is limited to holding that defendant is entitled new postplea proceedings with new counsel; we make no finding, nor prediction, as to the ultimate outcome of the proceedings or to the merits of her underlying claim. See *People v. Zirko*, 2021 IL App (1st) 162956, ¶ 26, 196 N.E.3d 1131. Because we vacate and remand for appointment of new counsel based on counsel's actual conflict of interest, we do not address defendant's argument that counsel also provided ineffective assistance by failing to amend the motion to withdraw the plea under Rule 604(d).

¶ 52                                    III. CONCLUSION

¶ 53 For the reasons stated, we vacate the trial court's judgment denying defendant's motion to withdraw her guilty plea and remand to the trial court for the appointment of conflict-free counsel and further postplea proceedings consistent with this order.

¶ 54 Vacated and remanded with directions.