NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 250065-U

NO. 4-25-0065

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 2, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Tazewell County |
| HUNTER R. WATERS, | ) | No. 23CF821 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Christopher R. Doscotch, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Justices Knecht and DeArmond concurred in the judgment.

**ORDER**

¶ 1     *Held*:    The appellate court affirmed the denial of defendant's motion to withdraw his guilty plea because his plea was entered knowingly and voluntarily, his postplea counsel strictly complied with Illinois Supreme Court Rule 604(d) (eff. Apr. 15, 2024), and his postplea counsel did not labor under a conflict of interest.

¶ 2     Defendant, Hunter R. Waters, pleaded guilty to first degree murder (720 ILCS 5/9-1(a)(1) (West 2022)) pursuant to a fully negotiated plea agreement, and the trial court sentenced him to 70 years in prison. Thereafter, defendant filed a motion to withdraw his plea, which the court denied.

¶ 3     Defendant appeals, arguing (1) the trial court erred by denying his motion to withdraw his guilty plea because his plea was not knowing and voluntary and (2) his counsel (a) failed to strictly comply with Illinois Supreme Court Rule 604(d) (eff. Apr. 15, 2024)and (b) labored under an actual conflict of interest.

¶ 4    We disagree and affirm.

¶ 5                    I. BACKGROUND

¶ 6                    A. The Charges and Preplea Proceedings

¶ 7    Following the death of defendant's nine-week-old daughter, A.W., in November 2023, the State charged defendant with three counts of first degree murder (720 ILCS 5/9-1(a)(1), (2) (West 2022)) and nine counts of aggravated battery to a child (*id.* § 12-3.05(b)(1)). The charges alleged defendant, who was 19 during the commission of the offenses, inflicted blunt force trauma to various parts of A.W.'s body causing severe injury and death. The trial court appointed the public defender to represent defendant and set his jury trial for September 2024.

¶ 8    During an August 2024 pretrial conference, the trial court was informed defendant was displeased with the "demeanor" of one of his two public defenders. The lead attorney on defendant's case informed the court he explained to defendant that defendant's other attorney had his "best interest at heart" and he was "much better off with two lawyers on this case." After noting defendant's concern was a mere "personality issue" with one of his attorneys, the court concluded no further action was necessary.

¶ 9    At a September 2024 pretrial conference, the parties brought to the trial court's attention a recorded video visit between defendant and his family, wherein defendant claimed he planned to make statements about his counsel that would cause the court to "fire both [of his attorneys]." After the court reviewed the recording, it admonished defendant not to engage in any outbursts at trial. Thereafter, defendant's lead counsel noted that although defendant had stated he had issues with his other attorney, they tried to "patch those up," and lead counsel was "surprised to hear that [he] would be exposed." Lead counsel stated he had asked defendant if he had any complaints about counsel's own representation and defendant had indicated he did not. The court

asked defendant if that representation was accurate, and defendant responded, "Yeah."

¶ 10                                    B. The Guilty Plea and Sentence

¶ 11           Later in September 2024, on the date set for trial, defendant chose to enter a guilty plea pursuant to a fully negotiated plea agreement. Before accepting defendant's plea, the trial court elicited from him that (1) he was mentally and physically capable of deciding whether to plead guilty, (2) his highest level of education was the twelfth grade, (3) he could read and understand English, and (4) he had reviewed the plea agreement with his attorney. Defendant noted his counsel answered any questions he had and indicated he was satisfied with his lead counsel. Defendant also confirmed he was not under the influence of alcohol or prescription medication that would affect his ability to understand the nature of the agreement, the charges, or the penalties.

¶ 12                                    1. *The Terms of the Plea Agreement*

¶ 13           The prosecutor explained that under the terms of the agreement, defendant was (1) pleading guilty to one count of first degree murder, which had a sentencing range of 20 to 100 years in prison and (2) agreeing to serve 70 years in prison, with 3 years of mandatory supervised release. In exchange, the State agreed to dismiss the remaining counts. The trial court clarified that defendant would have the "opportunity for parole after 20 years" due to his age but elicited from him that no one had promised him what the result of such a hearing would be. Defendant stated he agreed that the prosecutor's explanation of the agreement was correct. The court then read the first degree murder charge, and defendant confirmed he understood it and wanted to plead guilty. In response to questioning from the court, defendant stated he understood he could persist in a plea of not guilty and seek a trial, but he affirmed he was waiving that right. He also stated he understood and waived his rights to a trial and to cross-examine and confront witnesses.

¶ 14                                    2. *The Factual Basis*

¶ 15    The State provided the following factual basis for defendant's guilty plea. On the morning of November 26, 2023, the Pekin Fire Department responded to a residence regarding a report of a two-month-old female, identified as A.W., who was having trouble breathing. A.W. was transported to a hospital, where bruising was observed on her arm and chest and her head appeared to be misshapen. She was unresponsive and was intubated because she was unable to breathe on her own. Medical personnel described her condition as follows:

> "A.W. had a large hematoma to the back of her head putting significant pressure on her brain, and further imaging revealed A.W. to have a fractured skull, numerous and scattered subarachnoid hemorrhages, three distinct subdural hemorrhages, a midline hematoma beneath bone, a lacerated liver, hematoma to both adrenal glands, sever[al] bilateral retinal hemorrhages, and multiple broken ribs."

¶ 16    Defendant told a detective he was alone with A.W. in his bedroom on November 26, 2023, from 12:45 a.m. until the 911 call at 9:45 a.m., but he had no explanation for her injuries. A.W.'s mother, Abigail C., confirmed defendant was left alone with A.W. at about 12:45 a.m. A.W. appeared to have no signs of injury at that time.

¶ 17    Defendant initially claimed that A.W. woke up crying and he tried to feed her, but she would not eat and appeared to be choking. Defendant stated he had become "frustrated, angry, [and] pissed off" after A.W. woke up and he began handling her in a "rough manner" by dropping her from a height of a few inches onto his bed, such that she might have hit her head on an Xbox controller.

¶ 18    In a subsequent interview with a detective, defendant admitted he was angry, overwhelmed, and frustrated with A.W. due to her crying. As a result, he handled her "roughly" by striking her head on a changing table while changing her diaper, holding her tightly around her

ribcage, shaking her, and repeatedly striking her head against his bedroom door.

¶ 19    Ultimately, A.W. was pronounced dead, and an autopsy established her cause of death was blunt force injuries to her head and neck consistent with physical abuse.

¶ 20                                3. *Right To Appeal Admonitions*

¶ 21    Following the State's recitation of the factual basis, the following colloquy occurred:

> "THE COURT: *** All right. [Defendant], any promises been made to you other than what we've discussed or as contained in the paperwork?
>
> THE DEFENDANT: No.
>
> THE COURT: Anyone forcing you, coercing you, or threatening you into entering this agreement?
>
> THE DEFENDANT: No.
>
> THE COURT: All right. I'll find your plea is made knowingly and voluntarily, and you understood the penalty ranges; is that correct?
>
> THE DEFENDANT: Yes."

¶ 22    The trial court then accepted defendant's guilty plea to first degree murder and sentenced him to 70 years in prison in accordance with the plea agreement. The trial court then admonished defendant as follows:

> "You have a right to appeal. Prior to taking an appeal, you'd have to file in this court within 30 days of today's date, [on] which sentence is imposed[,] a written motion asking to have the judgment vacated and for leave to withdraw the plea of guilty setting forth the grounds for the motion.
>
> The motion must be in writing. It must be filed with the clerk within that 30

days and include all the reasons I stated. If I grant it, the motion—your plea of guilty would be withdrawn and your sentence and judgment vacated and the matter [would] be set for trial.

Any counts that were dismissed as part of the plea agreement can be reinstated as to the State's request, and that would be the Counts 2 through 12 that were dismissed, and this [count] could be reinstated as well. State would be released from any other promises it had made.

If I deny your motion, then you'd have 30 days from the date the motion was denied to file with the circuit clerk of this court a written notice of appeal or request the circuit clerk [to] prepare it and file it on your behalf to start the process for going to the Appellate Court.

If you can't afford the assistance of an attorney for your motion or appeal, an attorney would be appointed to represent you free of charge. If you can't afford the transcript, you'd get that for free as well. Did you understand your appeal rights?"

Defendant responded, "Yes."

¶ 23                              C. The Motion To Withdraw Guilty Plea

¶ 24        In October 2024, defendant's lead counsel filed a motion to withdraw the guilty plea. In that motion, counsel asserted that defendant contacted him following defendant's guilty plea to inquire about an appeal, and they met to discuss that option. During their conversation, defendant told counsel he did not feel coerced or forced to plead guilty, he was not under the influence of alcohol or drugs at the time of his plea, and no one offered him anything to plead guilty beyond the terms of the agreement. Defendant further stated he was taking medication as

- 6 -

prescribed to him at the time of his plea and the medication did not impair his judgment. The motion noted defendant told counsel that "he did not know of a basis on which to withdraw his plea," but he wanted "to appeal for the purpose of reducing his sentence." Attached to the motion was a written statement, signed by defendant, that reiterated the foregoing acknowledgements. The statement also provided the following:

> "I do not know of any reason to withdraw my plea. I did hear the Judge say I have the right to an appeal and I do wish to appeal for the purpose of reducing my sentence because I have read Supreme Ct. caselaw that states a male's brain is not fully developed until age 25."

¶ 25 In January 2025, defendant's counsel filed a Rule 604(d) certificate, and the trial court conducted a hearing on the motion to withdraw, at which defendant testified. Defendant acknowledged that he (1) wanted to challenge his sentence and (2) signed the written statement attached to the motion to withdraw his plea because it was an accurate reflection of his discussion with his attorney. Lead counsel asked defendant, "[A]s I understand it, you're really not wanting to withdraw your plea, but you believe the law provides you an avenue to appeal for the purposes of reducing your sentence; is that right?" Defendant responded, "Yeah." When counsel asked defendant why he believed he should be allowed to challenge his sentence, defendant responded, "[I]t's the law." Defendant acknowledged, however, he could not give counsel any supporting authority for defendant's position.

¶ 26 In ruling on defendant's motion to withdraw his guilty plea, the trial court opined it was "a very thorough plea" and defendant displayed no misunderstanding or hesitation when he entered it. The court also emphasized that when defendant had answered the court's questions about his mental state, defendant affirmed he had a "clear mind" to enter his plea. The court then

denied defendant's motion to withdraw his guilty plea.

¶ 27        This appeal followed.

¶ 28                            II. ANALYSIS

¶ 29        Defendant appeals, arguing (1) the trial court erred by denying his motion to withdraw his guilty plea because his plea was not knowing and voluntary and (2) his counsel (a) failed to strictly comply with Illinois Supreme Court Rule 604(d) (eff. Apr. 15, 2024) and (b) labored under an actual conflict of interest.

¶ 30        We disagree and affirm.

¶ 31        A. The Trial Court Did Not Err by Denying Defendant's Motion To Withdraw

His Guilty Plea

¶ 32        Defendant argues the trial court erred by denying his motion to withdraw his guilty plea because his plea was not knowingly and voluntarily made. Specifically, he contends he entered his guilty plea under two misapprehensions of law such that withdrawal of his plea was necessary to prevent a manifest injustice. We disagree.

¶ 33                    1. *The Applicable Law and Standard of Review*

¶ 34        A defendant has no automatic right to withdraw a guilty plea because the entry of such a plea is a grave act that is not reversible merely because the defendant wishes it. *People v. Burge*, 2021 IL 125642, ¶ 37. Accordingly, the withdrawal of a guilty plea is not warranted simply because the defendant is dissatisfied with the terms of a plea agreement. *People v. Reed*, 2020 IL 124940, ¶ 47. Instead, to obtain leave to withdraw a guilty plea, "a defendant must establish a manifest injustice under the facts involved." *Burge*, 2021 IL 125642, ¶ 37. A manifest injustice may exist when a guilty plea was entered based upon a misapprehension of the facts or law. *Id.* "In order to vacate a plea based on a misapprehension of law or fact, the defendant must establish,

- 8 -

under an objective standard, that [his] mistaken beliefs or impressions were reasonably justified under the circumstances as they existed at the time of the plea." *Id.*

¶ 35     We review a trial court's decision to deny a motion to withdraw a guilty plea for an abuse of discretion. *Id.* An abuse of discretion occurs when the court's ruling is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the court. *Id.*

¶ 36                                    2. *This Case*

¶ 37     Defendant argues his guilty plea was premised upon two misapprehensions of law. First, he asserts he did not know that by pleading guilty he would be unable to challenge his 70-year prison sentence on appeal. Second, he claims he did not know he could have presented mitigating evidence about his youth if he had insisted upon and received a sentencing hearing. According to defendant, because his guilty plea was premised upon those misapprehensions, it was not made voluntarily, and the trial court abused its discretion by denying his motion to withdraw his guilty plea. This argument is unavailing.

¶ 38          a. Defendant's Mistaken Belief He Could Challenge His Sentence Did Not

Render His Plea Involuntary

¶ 39     Defendant first asserts his plea was involuntary because he was never admonished he would be unable to appeal his sentence by pleading guilty, which he intended to do, and, in fact, the trial court "suggested" there was no "impediment to appealing his sentence" by admonishing him only that he had "the right to appeal."

¶ 40     When determining the voluntariness of a guilty plea, the trial court first looks to the requirements of Illinois Supreme Court Rule 402(a) (eff. July 1, 2012). Rule 402(a) instructs a court to accept a guilty plea only after informing the defendant and determining he or she understands (1) the nature of the charge, (2) the minimum and maximum sentence prescribed by

law, (3) he has the right to plead not guilty or guilty, and (4) if he pleads guilty, there will be no trial, and therefore, he waives the right to a trial by jury and to confront the witnesses against him. *Id.*

¶ 41     The record in this case demonstrates the trial court complied with Rule 402(a). Prior to accepting defendant's plea, the court elicited from defendant he understood (1) the first degree murder charge, (2) the minimum and maximum sentence for the offense, (3) he had the right to persist in pleading not guilty, and (4) by pleading guilty, he would waive his rights to a trial and to confront the witnesses against him.

¶ 42     Importantly, Rule 402(a) does not require courts to admonish defendants that by pleading guilty pursuant to a fully negotiated plea agreement, they waive their right to challenge their sentences on appeal. *Cf. People v. Johnson*, 2018 IL App (3d) 150679, ¶ 22 (noting Rule 402(a) "does not require courts to admonish a defendant pleading guilty as to the ramifications of a sentencing cap"). Indeed, defendant acknowledges no admonishment "regarding a plea's impact on one's right to appeal sentence" is required under Rule 402(a). Accordingly, the court had no obligation under Rule 402(a) to inform defendant that by pleading guilty, he would be unable to appeal the length of his sentence, and the court's admonitions complied with the rule.

¶ 43     The trial court likewise complied with Illinois Supreme Court Rule 402(b) (eff. July 1, 2012), which requires the plea agreement to be stated in open court and the court must question the defendant to (1) confirm the terms of the agreement and (2) determine whether any force, threats, or promises apart from the plea agreement were used to obtain the guilty plea.

¶ 44     Again, the record shows the trial court complied with Rule 402(b) before accepting defendant's plea. The terms of the plea agreement were stated in open court, and the court questioned defendant about his guilty plea. When questioned, defendant confirmed the terms of

the agreement and denied that any force, threats, or promises other than the terms of the plea agreement were used to secure his plea.

¶ 45    Finally, Illinois Supreme Court Rule 605(c) (eff. Apr. 15, 2024) requires the trial court to give the following admonitions to a defendant who pleads guilty pursuant to a negotiated agreement:

"(1) that the defendant has a right to appeal;

(2) that prior to taking an appeal the defendant must file in the trial court, within 30 days of the date on which sentence is imposed, a written motion asking to have the judgment vacated and for leave to withdraw the plea of guilty, setting forth the grounds for the motion; [and]

(3) that if the motion is allowed, the plea of guilty, sentence and judgment will be vacated and a trial date will be set on the charges to which the plea of guilty was made."

¶ 46    In this case, the record establishes that the trial court properly admonished defendant pursuant to Rule 605(c) regarding his appeal rights. The court informed defendant he had a right to appeal but that he would first need to file within 30 days a motion (1) seeking to vacate the judgment against him, (2) asking for leave to withdraw his guilty plea, and (3) setting forth the grounds for the motion. Again, the court had no duty to advise defendant as to the effect his guilty plea would have upon his ability to challenge the length of his sentence on appeal.

¶ 47    Given the foregoing, defendant cannot establish that his mistaken belief that he could challenge the length of his sentence despite pleading guilty constituted a manifest injustice. Defendant's argument amounts to a claim the trial court was required to admonish him beyond what is provided in the applicable supreme court rules, but that claim clearly is not correct.

¶ 48　　　　We also note that at no point during the plea proceedings—or even on appeal—does defendant allege he would not have pleaded guilty had he known he could not appeal the length of his sentence. To the contrary, the motion to withdraw his guilty plea, the statement signed by defendant attached to the motion, and defendant's own testimony at the motion hearing all indicated defendant did *not* want to withdraw his guilty plea. Instead, the sole basis for his motion was to challenge the length of his sentence. Absent a claim he would not have pleaded guilty and would have proceeded to trial had he known he could not appeal the length of his sentence, "defendant did not establish a basis for the withdrawal of his guilty plea and vacatur of the judgment." *People v. Irrelevant*, 2021 IL App (4th) 200626, ¶ 43 (concluding the trial court did not abuse its discretion by denying the defendant's motion to withdraw his guilty plea, in part, when the defendant never alleged he would not have pleaded guilty had he known he was required to serve 85% of any prison sentence imposed pursuant to the negotiated plea agreement); see *People v. Williams*, 2012 IL App (2d) 110559, ¶ 18 (affirming the denial of the defendant's motion to withdraw his guilty plea where the "defendant does not allege that he would not have pleaded guilty").

¶ 49　　　　We further note the State raises the additional argument that no manifest injustice occurred relating to defendant's understanding of his appeal rights because his belief he could challenge his agreed-upon sentence was not objectively reasonable. The State contends plea agreements are governed by contract principles and when defendant agreed to serve a 70-year prison sentence, he could not have reasonably believed he could thereafter unilaterally alter the terms of the agreement while requiring the State to comply with its end of the bargain. We acknowledge the State's position is well supported (see *People v. Millsap*, 2022 IL App (4th) 210192, ¶ 19 (stating negotiated guilty pleas "are governed by contract law")), and we note that

"[a] defendant should not be allowed to withdraw his plea when the real basis for his withdrawal is that he is dissatisfied with the length of his sentence" (*People v. Cunningham*, 286 Ill. App. 3d 346, 350 (1997)). However, because we rest our decision upon our determination defendant's plea was knowing and voluntary based upon the trial court's substantial compliance with Rule 402(a), Rule 402(b), and Rule 605(c), we need not directly address this additional argument.

¶ 50　　　　As a result, we conclude that, despite defendant's belief he could challenge the length of his sentence on appeal, his guilty plea was knowing and voluntary such that the trial court did not abuse its discretion by denying his motion to withdraw his plea.

¶ 51　　　　b. Defendant's Claim He Did Not Know He Could Have Presented Mitigating Information About His Youth at a Sentencing Hearing Did Not Render His Plea Involuntary

¶ 52　　　　Defendant also argues that, at the time of his plea, he did not know he could have presented mitigating evidence regarding his youth if he had not agreed to a fully negotiated plea and instead received a sentencing hearing. He asserts he "learned about this area of mitigation" only after he pleaded guilty, at which time he read United States Supreme Court cases stating a male's brain is not fully developed until age 25. He contends that because he entered his plea "without full knowledge of potential sentencing strategies and outcomes applicable to him," his plea was not knowing and voluntary. We disagree.

¶ 53　　　　As an initial matter, we agree with the State that defendant has forfeited this argument because it was not raised in the trial court. Illinois Supreme Court Rule 604(d) (eff. Apr. 15, 2024) provides that "any issue not raised by the defendant in the motion to *** withdraw the plea of guilty and vacate the judgment shall be deemed waived." We agree. Nowhere in defendant's motion to withdraw his guilty plea, his signed statement attached to the motion, or his

- 13 -

testimony did he assert that his decision to plead guilty was premised upon a misapprehension about whether he could present mitigating evidence regarding his youth at a sentencing hearing.

¶ 54 Regarding authority relating to male brain development, defendant asserted only that he "wish[ed] to appeal for the purpose of reducing my sentence because I have read Supreme Ct. caselaw that states a male's brain is not fully developed until age 25." Because defendant did not argue the issue he now raises on appeal, he has forfeited it. See *People v. Williams*, 299 Ill. App. 3d 791, 795 (1998) (noting that, pursuant to Rule 604(d), defendant forfeited issue on appeal when it was not presented to the trial court).

¶ 55 Forfeiture aside, defendant's argument nevertheless fails. Defendant bore the burden of establishing that his mistaken impression at the time of the plea was justified by objective standards. See *People v. Davis*, 145 Ill. 2d 240, 244 (1991) ("The burden is on the defendant to establish that the circumstances existing at the time of the plea, judged by objective standards, justified the mistaken impression."). However, he provided no justification, such as ineffective assistance of counsel or misrepresentations from the trial court, for his claim that his guilty plea was based on a lack of knowledge about presenting mitigating evidence of youth at sentencing.

¶ 56 Nor does defendant argue he believed he was *prohibited* from presenting such evidence; he argues only that he did not learn he could present potentially mitigating evidence at a sentencing hearing until after he entered his plea. But this does not show defendant operated under any misapprehension about the sentence he faced before he entered his guilty plea, particularly in light of the court's compliance with Rule 402(a), Rule 402(b), and Rule 605(c), as we discussed earlier. *Cf. People v. Williams*, 2021 IL App (3d) 190298, ¶ 26 (concluding that even though *People v. Buffer*, 2019 IL 122327, ¶ 42, which established a sentence greater than 40 years in prison constitutes a *de facto* life sentence, was decided after the defendant's guilty plea, the

defendant failed to show he acted under a misapprehension about the sentence he faced at the time he entered his plea).

¶ 57        Moreover, defendant has never asserted at any point that had he known he could have presented mitigating evidence about his youth at a sentencing hearing, he would not have pleaded guilty and pursued a trial. *Irrelevant*, 2021 Il App (4th) 200626, ¶ 43. Accordingly, defendant cannot establish a basis warranting the withdrawal of his guilty plea.

¶ 58        In sum, because defendant has failed to establish he pleaded guilty pursuant to a misapprehension of fact or law, he cannot show he suffered a manifest injustice that would warrant the withdrawal of his guilty plea. To the contrary, the record demonstrates defendant entered his guilty plea knowingly and voluntarily. As a result, we conclude the trial court properly exercised its discretion by denying defendant's motion to withdraw his guilty plea.

¶ 59        B. Defendant's Counsel Complied With Illinois Supreme Court Rule 604(d)

¶ 60        Next, defendant acknowledges that his counsel's Rule 604(d) certificate was facially compliant. However, he contends the record refutes the certificate and shows counsel failed to make amendments necessary to adequately present his claims. We disagree.

¶ 61                1. *The Applicable Law and Standard of Review*

¶ 62        Rule 604(d) provides, in relevant part, the following:

> "The defendant's attorney shall file with the trial court a certificate stating that the attorney has consulted with the defendant either by phone, mail, electronic means or in person to ascertain defendant's contentions of error in the sentence and the entry of the plea of guilty, has examined the trial court file and both the report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing, and has made any amendments to the motion necessary for adequate

presentation of any defects in those proceedings." Ill. S. Ct. R. 604(d) (eff. Apr. 15, 2024).

¶ 63 Strict compliance with Rule 604(d) is required. *People v. Brown*, 2023 IL App (4th) 220573, ¶ 30. When the certificate fails to comply strictly with Rule 604(d), the appellate court should remand the matter to the trial court to provide the defendant with the opportunity to file a new postplea motion and conduct a new hearing on the motion. *Id.* Our review of counsel's compliance with Rule 604(d) is *de novo*. *Id.*

¶ 64                                              2. *This Case*

¶ 65 When arguing that defense counsel failed to comply with Rule 604(d) despite his filing a facially compliant certificate, defendant asserts that although the motion to withdraw his guilty plea noted his contentions, counsel made no effort to shape those contentions into cognizable legal claims. The State responds that defendant's grievance amounts to his dissatisfaction with counsel's failure to better present a meritless claim.

¶ 66 In support of his argument, defendant relies upon *People v. Gray*, 2023 IL App (4th) 230076, and *People v. Keele*, 210 Ill. App. 3d 898 (1991). However, defendant's reliance on these cases is misplaced.

¶ 67 In *Gray*, this court determined the defendant's postplea counsel failed to strictly comply with Rule 604(d) when the record established that counsel failed to meaningfully consult with the defendant such that she "did not know specifics" regarding why the defendant wanted to withdraw his guilty plea. *Gray*, 2023 IL App (4th) 230076, ¶¶ 33, 41. This court noted several indicators in the record to support our conclusion, including (1) the defendant's comments to the trial court that his postplea counsel had not spoken to him, (2) counsel's comment to the court suggesting she did not know why the defendant did not understand the plea, (3) counsel's failure

- 16 -

to attach an affidavit to the motion to withdraw the defendant's plea to substantiate a claim based upon facts not appearing in the record, and (4) counsel's reference to the wrong portion of the sentencing transcript when arguing the defendant's motion to withdraw his plea. *Id.* ¶¶ 33, 35-36.

¶ 68        In *Keele*, the appellate court reversed the trial court's denial of the defendant's motion to withdraw his guilty plea. *Keele*, 210 Ill. App. 3d at 903. The court explained that a review of the plea transcript revealed a "less-than-model acceptance of a guilty plea under the standards of Rule 402," but the defendant's motion alleged only generally " 'Rule 402 was not complied with.' " *Id.* at 901, 903. Given its reading of (1) the transcript, which revealed issues with the trial court's acceptance of the defendant's guilty plea, and (2) the motion to withdraw, which lacked the "specifics of why the plea was involuntary," the appellate court determined factual issues existed as to whether the defendant knowingly and voluntarily pleaded guilty. *Id.* at 903.

¶ 69        The present case, unlike *Gray*, does not involve counsel's committing a myriad of errors that hindered the presentation of the arguments defendant wished to raise for withdrawing his guilty plea. To the contrary, although defendant claims his counsel failed to adequately present a claim warranting the withdrawal of his plea, defendant *himself* told counsel he knew of no reason to withdraw his plea. Indeed, at the hearing on his motion to withdraw his plea, defendant acknowledged to the trial court directly that he did *not* want to withdraw his guilty plea.

¶ 70        In addition, as we earlier explained, our reading of the record in this case, unlike *Keele*, reveals no concerns about the trial court's compliance with Rule 402. Nothing in the record suggests the existence of any issue regarding the voluntariness of defendant's plea that subsequently went unaddressed in his motion to withdraw, especially when defendant twice affirmed he did not want to withdraw his guilty plea.

¶ 71 We have previously held that amendments to a motion to withdraw a guilty plea are not necessary when there are no amendments that could have salvaged a defendant's meritless claim. *Brown*, 2023 IL App (4th) 220573, ¶¶ 43, 50. Here, at bottom, defendant argues his counsel should have better presented a claim that would warrant the withdrawal of his guilty plea despite his own admission he could think of no reason to withdraw his plea.

¶ 72 Ultimately, however, defendant's claim is meritless because, as we have noted, "[a] defendant should not be allowed to withdraw his plea when the real basis for his withdrawal is that he is dissatisfied with the length of his sentence." *Cunningham*, 286 Ill. App. 3d at 350. "[I]t would be an exercise in futility and a waste of judicial resources to remand for an attorney to replead a claim that has already been adjudicated meritless." *Brown*, 2023 IL App (4th) 220573, ¶ 50. Because nothing in the record refutes the assertion in counsel's Rule 604(d) certificate that he made the amendments necessary to adequately present any defects in defendant's plea proceedings, we therefore conclude counsel complied with Rule 604(d).

¶ 73 C. Defendant's Counsel Did Not Have a Conflict of Interest

¶ 74 Last, defendant argues that because the motion to withdraw his guilty plea prepared by his defense counsel implicated potential claims of ineffective assistance of counsel, the motion created a conflict of interest necessitating counsel's withdrawal. We disagree.

¶ 75 1. *The Applicable Law and Standard of Review*

¶ 76 The sixth and fourteenth amendments to the United States Constitution (U.S. Const., amends. VI, XIV) guarantee a defendant the right to effective assistance of counsel, which includes the right to conflict-free representation. *Gray*, 2023 IL (4th) 230076, ¶ 18. "Attorneys who represent defendants while having inconsistent loyalties to other clients, to the State, or to themselves labor under a conflict of interest, which can amount to ineffective assistance of

counsel." *Id.* An attorney should withdraw when a defendant challenges the attorney's effectiveness in a motion to withdraw a guilty plea because attorneys cannot argue their own ineffectiveness or be a witness for or against the defendant when their representation is a contested issue. *Id.*

¶ 77　　　　A conflict of interest may be either *per se* or actual. *People v. Taylor*, 237 Ill. 2d 356, 374 (2010). In the present case, defendant argues the existence of only an actual conflict of interest. To establish an actual conflict of interest, a defendant must show some specific defect in his counsel's strategy, tactics, or decision-making attributable to the conflict. *Id.* at 376. Whether counsel acted under a conflict of interest is a legal question subject to *de novo* review. *People v. Schutz*, 2017 IL App (4th) 140956, ¶ 14.

¶ 78　　　　　　　　　　　　　　2. *This Case*

¶ 79　　　　Defendant argues his counsel acted under an actual conflict of interest because the wording of the motion to withdraw defendant's guilty plea recounted "everything that was done *right* during the taking of this plea" (emphasis in original) and therefore suggested defendant entered his plea knowingly and voluntarily. In essence, defendant asserts the motion argued against itself. Defendant contends that counsel wrote the motion this way because counsel intended to protect his own interest by insulating himself from a claim of ineffective assistance of counsel.

¶ 80　　　　The State argues no conflict of interest existed because (1) counsel raised the sole claim defendant wished to raise and (2) defendant made no assertion in the trial court that counsel provided ineffective assistance.

¶ 81　　　　In making his argument, defendant relies upon *People v. Zirko*, 2021 IL App (1st) 162956, *People v. Garcia*, 2018 IL App (5th) 150363, *People v. Brown*, 2017 IL App (3d) 140921, and *People v. Kinard*, 2023 IL App (4th) 210577-U. He asserts these cases support his claim that

by discussing the procedurally compliant aspects of the plea proceeding in the motion to withdraw defendant's plea, counsel must have been protecting his own interests over defendant's by insulating himself from a claim of ineffective assistance of counsel. Defendant contends that had counsel presented defendant's claims that he was unaware that he (1) could not challenge the length of his sentence and (2) was allowed to present mitigating evidence about his youth at a sentencing hearing, counsel would have necessarily been conceding he failed to advise defendant of those facts. Defendant continues, "[C]ounsel would potentially be presenting arguments about his own ineffectiveness," amounting to a conflict of interest. Defendant's "labyrinthine" argument is unavailing. *Gray*, 2023 IL App (4th) 230076, ¶ 17.

¶ 82    To begin, defendant's reliance upon *Zirko*, *Garcia*, and *Brown* is misplaced. Each of these cases involved the defendants' attorneys filing a postconviction motion explicitly seeking relief based upon the attorneys' own admitted mistakes or ineffective assistance. *Zirko*, 2021 IL App (1st) 162956, ¶ 8; *Garcia*, 2018 IL App (5th) 150363, ¶ 20; *Brown*, 2017 IL App (3d) 140921, ¶ 32. In each case, the appellate court held that a conflict of interest existed because, despite raising those claims, each attorney failed to make any reasonable effort to argue them, such that they were no longer vigorously representing the defendants. *Zirko*, 2021 IL App (1st) 162956, ¶¶ 25-26; *Garcia*, 2018 IL App (5th) 150363, ¶ 39; *Brown*, 2017 IL App (3d) 140921, ¶ 33.

¶ 83    Unlike *Zirko*, *Garcia*, and *Brown*, defendant's motion to withdraw his plea never made an assertion of ineffective assistance. Nor does the record show counsel admitted to any mistake or ineffective assistance during his representation of defendant.

¶ 84    Defendant's reliance upon *Kinard* is similarly unavailing. In *Kinard*, although the defendant's motion to withdraw her guilty plea did not explicitly allege ineffective assistance of counsel, the defendant's attorney admitted to the trial court that he provided the defendant with

incorrect advice. *Kinard*, 2023 IL App (4th) 210577-U, ¶¶ 12, 15, 19. However, counsel never amended the defendant's motion to raise an ineffective assistance claim, nor did he argue the matter under the appropriate legal principles, opting instead to place the blame for the defendant's misunderstanding upon information given to her by the probation office. *Id.* ¶¶ 15, 19. The appellate court concluded counsel's actions indicated a reluctance to acknowledge and argue his ineffective assistance, which amounted to an actual conflict of interest. *Id.* ¶ 50.

¶ 85        In this case, unlike *Kinard*, no assertion that defense counsel's performance was deficient was made in defendant's motion to withdraw his guilty plea, in his written statement, or at the hearing on the motion. Although defendant claimed he (1) believed he could challenge his sentence on appeal and (2) did not know he could present mitigating evidence about his youth at a sentencing hearing, defendant gave no indication that this misunderstanding was due to incorrect or misleading advice from his attorney. In fact, defendant did not mention his attorney's performance at all in the motion. Defendant's only assertion of any dissatisfaction with either of his attorneys occurred prior to his plea and amounted to a mere "personality issue" with defendant's other attorney—not counsel who filed the motion to withdraw his plea.

¶ 86        Given this context, we reject defendant's claim that the motion created a conflict of interest for his attorney. See *Gray*, 2023 IL App (4th) 230076, ¶ 24 (concluding that because the defendant's motion to withdraw his guilty plea did not raise a claim of ineffective assistance or allege any mistake by his attorney, "[t]here was no reason for counsel to infer she would need to argue her own ineffectiveness" as would create a conflict of interest). Accordingly, we conclude defense counsel did not labor under a conflict of interest. See *id.* (concluding counsel did not operate under a conflict of interest by filing a motion to withdraw the defendant's guilty plea that repeated the defendant's claims "almost verbatim" and alleged no mistake or ineffective assistance

on the part of counsel).

¶ 87                              III. CONCLUSION

¶ 88          For the reasons stated, we affirm the trial court's judgment.

¶ 89          Affirmed.